# THE PENNSYLVANIA RAILROAD COMPANY *vs.* FRANK CECIL.

*Instruction as to Sufficiency of Plaintiff's Evidence—Refusal to
Grant Unnecessary Prayer—Railway Brakeman Injured by
Contact with Car Left Standing on Adjoining Track too Near
a Switch—Evidence of Negligence—Instructions—Contribu-
tory Negligence and Assumption of Risk for the Jury—Duty
of One Railway Company to Furnish Safe Place of Work for
Employees of Another Company.*

When the defendant at the close of plaintiff's evidence offers
a prayer asking the Court to instruct the jury that the plain-
tiff's evidence is legally insufficient to entitle him to recover,
and, although excepting to the action of the Court in refusing
it, yet proceeds to offer evidence in defense, he thereby waives
the exception.

A prayer offered by the defendant, at the close of the testimony
on both sides, which asks the Court to instruct the jury that
the plaintiff has offered no evidence legally sufficient to enti-
tle him to recover, is properly rejected, because all the testi-

mony on both sides must be considered in determining the sufficiency of the evidence in the case, and it may be that the evidence produced by the defendant's witnesses has supplied a deficiency in the testimony adduced by the plaintiff.

The refusal of the trial Court to grant an instruction in itself proper is not reversible error when the subject-matter of that instruction is fully covered by other granted instructions.

Plaintiff was a brakeman on the G. R. Co., which company had rights of way on the tracks and yards of the defendant railway company at a certain point. When a freight train on which plaintiff was serving approached the yards, it was signalled by defendant's operator to take the fourth siding. Plaintiff went ahead and threw open three switches for his train, which was following him about as fast as a man walks, and when the train caught up, he got on the second car by grasping the handhold on the side and putting his foot in a stirrup, so that his body was somewhat extended beyond the side of the car. This position was the usual one for brakemen to take under the circumstances. On the adjoining track at the third switch there had been left standing a car about six inches from the opening of that switch. The regulation space required for safety between a car so left standing at a switch and the next track is not less than two feet. It is the custom of well-regulated railway companies to set posts in the ground near switches indicating the distance from the switch where cars can be properly placed, but in this case there were no such posts. While plaintiff was in the position above mentioned, and as he was getting up on his car, it approached the car left standing next the switch and plaintiff was crushed against it and seriously injured. *Held,* that there was evidence of negligence on the part of the defendant in placing the standing car as it was placed; in the failure to set posts near the switch to enable those in charge of the cars to put them in a safe position, and in the failure of the car inspector in charge of the yard to supervise the location of cars with reference to the danger to brakemen in the performance of their duty on incoming trains.

In an action to recover damages for the injury so inflicted, the jury were properly instructed that if they found the above-mentioned facts, the plaintiff was entitled to recover, unless

they also found that before he placed himself in a position of danger on the side of his car, he had notice that the car standing on the adjoining track was close to the clearance of plaintiff's car, and, notwithstanding such notice, put himself in a position of danger, and thereby contributed to his injury, in which case their verdict must be for the defendant, although they may believe that the defendant was negligent in leaving the car too close for the clearance of the passing train.

*Held,* further, that there was no such proof of contributory negligence on the part of the plaintiff, or of his assumption of the risk arising from the position of the standing car, as would warrant the withdrawal of the case from the jury on that ground.

When one railway company has the right to use the tracks of another railway company at a certain place, the latter company is under the same obligation to provide, for the employees of the former company, a reasonably safe place in which to do their work in connection with these running rights, as they are to their own employees.

*Decided June 30th, 1909.*

Appeal from the Circuit Court for Allegany County (KEEDY, J.).

*Plaintiff's 1st Prayer.*—The plaintiff by his counsel prays the Court to instruct the jury that if they shall find from the evidence that on the 11th day of December, 1906, the plaintiff was employed as a brakeman by the George's Creek and Cumberland Railroad Company and that said Railroad Company had certain traffic arrangements with the defendant company under which the former had certain running rights to and into the State line yards of the defendant near Ellerslie and that by virtue of such running rights the train and crew of the plaintiff entered upon the tracks of the defendant and received the permission signal of defendant and instruction to enter in train yards on track No. 4 and shall further find that pursuant thereto the plaintiff's train did so enter

and shall find that said yards were under the control of the defendant and that the defendant negligently permitted one of the freight cars on its said yard to so corner or protrude towards a lateral track of the defendant in said yard upon which the train of the plaintiff was entering under the permissive signals aforesaid, as not to leave sufficient space for the safe passage of the cars of the plaintiff's train and the crew thereon while engaged in the duty of handling said train in an ordinary, prudent and careful manner, and shall find that as a result of such negligence if the jury so find, the plaintiff while exercising due care and caution on his part and while exercising his duty as such brakeman was caught and rolled and sorely injured between such protruding car and one of the cars in his own train by reason of the negligence aforesaid, and was sorely injured and damaged thereby then the plaintiff is entitled to recover in this case. (*Granted in connection with defendant's 2nd Prayer.*)

*Defendant's 2nd Prayer.*—The defendant prays the Court to instruct the jury that if they find from the evidence that the plaintiff was hurt while standing on the side of a freight car which was passing a car standing on another track and that before he placed himself in such a place of danger, he had notice that the cars standing on the adjoining track were close to the clearance of the car on which plaintiff was riding, and that the attention of the plaintiff to said clearance space was further called by John R. Porter, car inspector of the Pennsylvania Railroad Company, and that the plaintiff notwithstanding such notice and attention being called, placed himself in such position of danger, and thereby contributed to his own injury, their verdict must be for the defendant, even though the jury may believe that the defendant was negligent in leaving the car too close for the clearance of the passing train. (*Conceded.*)

*Defendant's 3rd Prayer.*—The defendant prays the Court to instruct the jury that if they find from the evidence that the injury complained of was caused by reason of the defendant's agent having placed a freight car on a track too

close for the clearance of a train on an adjoining track· and that in the day time the plaintiff's train before passing said freight car slackened speed and plaintiff got off of the same and examined the situation of said freight car and signaled his train to go ahead, and thereupon before reaching the said freight car, plaintiff got on the stirrup of a freight car of his own train and was injured by· striking against said freight car standing as aforesaid, then the plaintiff was guilty of negligence contributing to his own injury, and cannot recover in this case.   (*Rejected.*)

The map referred to in the opinion of the Court is as follows:

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, WORTHINGTON and HENRY, JJ.

*De Warren H. Reynolds,* for the appellant.

*Finley C. Hendrickson* and *David J. Lewis,* for the appellee.

PEARCE, J., delivered the opinion of the Court.

This suit was brought by the appellee to recover damages for an injury occasioned by the alleged negligence of the appellant, and the result was that the appellee was given a verdict and judgment for $8,000.

The principal facts of the case are these:

The plaintiff, Frank Cecil, on December 12th, 1906, being then a little over nineteen years of age, was in the service of the George's Creek and Cumberland Railroad Company as a brakeman upon a train of coal cars, and had been so employed for about five weeks previously. He had been manumitted by his father, and authorized to contract for himself, and to receive and retain the wages of his labor. The George's Creek and Cumberland Railroad connected with the Pennsylvania Railroad, and delivered loaded coal cars to it for transportation at the State Line yards of the latter company, and for this purpose had a contract for what was termed "'running rights" over the tracks of the Pennsylvania Railroad at its State Line yards.

A copy of a blue print plan of said yard showing all these tracks and the exact spot of the accident will be inserted in this opinion, by the reporter. When approaching this yard for the delivery of coal cars, the operator in a tower of the Pennsylvania Railroad signals the approaching train, directing what track it shall take in the yard, and at the time of this accident the operator signalled the engineer of the coal train to take track No. 4, indicated on the copy of the blue

print. The coal train being on the main track when this signal was received, it was necessary, in order to reach track No. 4, that four switches should be opened and passed through, and it was the duty of the plaintiff as brakeman to open these switches, being sometimes aided in this by some employee of the Pa. R. R. Co. On this occassion he stepped from the slowly moving train, and went ahead of it to open these switches. He states that he threw the switch from the main track and also those to the third and fourth side tracks, while one of the defendant's car inspectors, who was nearby, threw the switch to the first side track, and he thinks also that to the second side track, and in this the recollection of the engineer, Mr. Carberry, agrees with that of the plaintiff; but Mr. Porter, the car insector in the day time, and the only one shown by the record to have been present that morning, testified that he did not open any switch. While these several switches were being opened, the train moved steadily in, about as fast as a man could walk, according to the testimony. When the switch leading into track No. 4 was opened, the plaintiff then stepped into the space between tracks No. 3 and No. 4 and walked back between these tracks to mount the moving train as his duty required him to do in order to cut off the engine and leave the cars on track No. 4. As the train came on, he caught the hand hold on second car behind the engine, placed his foot in the stirrup provided on each car for the purpose, and attempted to swing up on the car, when he was caught and rolled between the car he was mounting and a car of the Pennsylvania Railroad left standing on track No. 3. As the train moved further out on track No. 4, he dropped to the ground unable to walk or stand, and soon after was sent to a hospital at Cumberland where he remained two weeks. His hip and shoulder, or collar bone, were injured, the latter being broken, and the sciatic nerve somewhere in the hip being seriously injured, resulting in the wasting of the muscles of the left leg, the shrinkage of the whole limb, and a total inability for any labor sufficient for his support. The testimony of Dr. Wiley, as well as of

the other physicians who testified, was that there is no remedy for so serious an injury to the sciatic nerve; that neither the knife nor medicine does any good. The car standing on track No..3 with which the plaintiff came into contract is designated in the testimony as a "cornered" car, and it was one of several cars standing there, that one being nearest to the switch. A "cornered" car as explained by the testimony, means one placed so near the opening of the switch, as not to leave the regulation space required for safety between it and cars on the next track leading out of that switch. This regulation space, according to the testimony of Mr. Burket, one of defendant's witnesses, and supervisor of its tracks at that yard, was from 2 ft. 3 in. to 2 ft. 1 in., according to the width of the cars, and the evidence showed that the space between the rear of this "cornered" car, and the car passing on track No. 4, was not over six inches. The evidence also was that it is the custom of well regulated railroads to set posts in the ground near switches, indicating the distance from a switch where cars can be placed without "cornering," and that there were no such posts or any other guides for that purpose at that place.

Mr. Porter, one of defendant's witnesses, and car inspector at that yard, testified that at the time of this accident he was standing near the shanty shown on the plat and saw the train as it was approaching the switch to enter track No. 4; that he did not know whether he had then inspected these cars since they were left there, and did not know the south car was cornered, but he saw the person who threw the switches as the train came in, and that he recognied the plaintiff as the same person, and that he called his attention to that car, and said "it did not look like it would clear," and that the plaintiff went "and examined the place same as I did, and said he thought it would clear all right—he would try it; he stood on the inside rail of No. 4 and touched the car with his hand. The rules are if you can stand on a rail and touch the car across from you by the ends of your fingers, it will clear all right." The plaintiff denied this or any other conversation

with Mr. Porter at that time. The inherent improbability of such a conversation and experiment at that time must occur to the mind. According to the testimony of Mr. Carberry, the distance from the main track to the point of the accident was about twice the length of the Court room in which the trial was held. The appellee's brief, not contradicted verbally or otherwise by the appellant, states this distance to be 120 feet. The undisputed evidence is that the train came steadily in about as fast as a man's ordinary walk. Estimating this at three miles an hour, a man would cover 120 feet in about thirty secoonds. While the train was moving over this distance the plaintiff had to keep in advance of it, and according to Porter's testimony opened three switches. It is hard to understand how there was time and opportunity, in addition to these duties, to hold the conversation and make the experiment testified to by Porter, but this conflict of testimony was for the jury, and appears to have been settled to their satisfaction. At the close of the plaintiff's testimony, the defendant asked the Court to instruct the jury that under the pleadings in the case the plaintiff had offered no evidence legally sufficient to entitle him to recover and their verdict must be for the defendant, but this instruction was refused and the first exception was taken to that ruling. As the defendant however proceeded with the case by offering evidence in its own behalf, that exception has been waived, and will not be considered.

After the testimony had been concluded upon both sides, the plaintiff offered two prayers, the first reciting the facts necessary to a recovery, and the second being the usual prayer as to the measure of damages in cases of this character; and the defendant offered three prayers, the first being a renewal of the prayer to take the case from the jury, and the second and third being founded on the doctrine of contributory negligence as claimed to be established by the testimony of Porter as mentioned above. The Court granted the plaintiff's first prayer in connection with the defendant's second prayer, which was conceded by the plaintiff, and also granted

the plaintiff's second prayer which was conceded by the de-
fendant as correct, if the plaintiff was entitled to recover at
all, and the Court rejected the defendant's first and third
prayers. We shall request the reporter to set out the plain-
tiff's first prayer, and the defendant's second and third pray-
ers. It is not necessary to set out the plaintiff's second pray-
er, on the measure of damages. The defendant's first prayer
however is unusual and we will transcribe it here: "The de-
fendant, by its counsel, prays the Court to instruct the jury
that under the pleadings in this case, *the plaintiff* has offered
no evidence legally sufficient to entitle him to recover, and
their verdict must be for the defendant."

The peculiarity of the prayer is that while offered after
the close of testimony on both sides, it asks for a verdict for
defendant upon the testimony of *the plaintiff alone.* It is,
word for word, the same prayer which was offered and re-
jected at the close of the plaintiff's testimony. As we have
already said, all exception to the insufficiency of the plain-
tiff's evidence alone has been waived by the defendant. *Bara-
basz* v. *Kabat,* 91 Md. 55; *Cowen* v. *Watson,* 91 Md. 344. In
the latter case JUDGE FOWLER said: "By proceeding with the
case after its first prayer was refused, the defendant must
be held to have waived its exception to that action of the
Court." And that is now the settled law of this State based
upon sound reason and policy. In *Consolidated Railroad* v.
*Pierce,* 89 Md. 506, the defendant at the close of the whole
case, offered two prayers, both based in express language
upon the testimony of the plaintiff alone, and asking a ver-
dict for defendant. Both were rejected, and in affirming this
ruling, JUDGE BOYD said: "So far as the plaintiff's evidence
is concerned, that was to be taken in connection with the
other evidence in the case. If it be conceded that if the evi-
dence of the plaintiff be true, it alone did not make out a case
against the defendant, and that the evidence of the defend-
ant, if believed by the jury, was sufficient to acquit it of de-
fault (if that offered by the plaintiff was excluded) the dif-
ficulty still exists that the Court, in passing on the prayers,

was not authorized to consider the one and exclude the other, but was compelled to take all the testimony on both sides into consideration."

The case of the *Phil. B. & W. R. R.* v. *Hand,* 101 Md. 236, is an illustration of the strictness with which the Court applies the principle involved in the ruling now under consideration, in order not to trench upon the province of the jury to consider and weigh *all the evidence.* In that case the jury were instructed that "they were not entitled to presume that the plaintiff was guilty of negligence, but that fact, if relied on by the defendant, must be *proved by the defendant* by preponderating testimony, and that if their minds are in a state of equipoise as to whether she was guilty of negligence or not then they cannot find she was guilty of negligence." This prayer, it was contended, was correctly granted, as substantially the same as a prayer upheld in *Anderson* v. *P. W. & B. R. R.,* 72 Md. 519. There the jury were instructed that" in order to defeat a recovery on the ground of contributory negligence on the plaintiff's part, *the defendant must satsify the jury* by preponderating evidence of two facts: First, that the plaintiff was negligent; and secondly, that such negligence directly contributed to the injury." In holding that the instruction in the *Hand Case* was erroneous, the Court pointed out that it is the *existence* of negligence, and not the *party* by whom its existence is proved, that is material, and that while under the instruction in the *Anderson Case,* the defendant could rely upon *any evidence* adduced in the case that under the natural construction of the language of the instruction in the *Hand Case,* the defendant could only resort to that adduced by itself.

It will be seen from an examination of the record that much of the testimony offered by the defendant, or extracted from its witnesses, materially strengthened the averments of the declaration, and it would have been a grave error indeed to have granted that prayer as offered. But even if this prayer had been based upon *all the evidence in the case,* it would have been necessary to reject it, because, as we have

just said, there was evidence on the part of the defendant tending to sustain the plaintiff's case, that is to establish negligence on the defendant's part, causing the injury complained of, without any such proof of negligence on the plaintiff's part as would warrant the withdrawal of the case from the jury on that ground. So that, in whatever light the defendant's first prayer may be regarded, there was no error in its rejection.

The defendant's second prayer was very properly conceded. It fully and fairly left to the jury the question of contributory negligence of the plaintiff, upon the conflict of testimony, between the plaintiff and Porter as to the deliberate assumption of the risk of the cornered car by the plaintiff. The third prayer of the defendant was properly rejected. The only testimony in the case which we have been able to discover tending to support the theory of contributory negligence, is that of Mr. Porter which we have heretofore mentioned, and upon which the defendant's second prayer, which was conceded, is based, and, as is humorously expressed in the brief of the appellee, "so far as it is based upon testimony it is only tuned in another octave from the conceded prayer." If the second prayer had not been offered, the third prayer might have been perhaps a proper one to grant, and in such case, if we may judge from the concession of the second prayer, we may be allowed to infer that the third would have been conceded. But the defendant received under the second prayer the full benefit of every thing contained in the third, and in language clearer and more specific than that of the third. It has long been settled that where the law of the rejected prayer is accurately embodied in other granted prayers, the Court will not reverse because of the rejection of such prayer. *Poe's Prac.*, sec. 303; *Spencer* v. *Trafford,* 42 Md. 21.

The plaintiff's first prayer was granted in connection with the defendant's conceded prayer, and the jury was thus plainly instructed that in finding the facts enumerated in that prayer, they still could not render a verdict for plaintiff,

if they also found the facts enumerated in the defendant's second prayer.

The plaintiff's first prayer, except as to the defence of contributory negligence, covers the whole law of the case in clear and explicit terms, and the defendant's second prayer which by the action of the Court was practically made an addition to that prayer, covered the law as to contributory negligence in that case, in terms equally clear and explicit. There was abundant evidence of negligence on the defendant's part in placing the cornered car as it was placed; in the failure to set posts or guides near the switches to enable those in charge of the cars to place them safely without cornering; and in the failure of the car inspector in charge of that matter, to inspect or supervise the location of such cars with reference to the danger of cornering. The George's Creek and Cumberland Railroad Co. having running rights at the place of the accident, the defendant was under the same obligation to provide the employees of the George's Creek and Cumberland Railroad Co. with a safe place in which to do the work required of them in the performance of their duties, *in connection with those running rights,* as they were to their own employees in the performance of their duties. The plaintiff's duties required him to leave the train when and as he did, and to open these switches while the train was moving, and in the time thus allowed for it; they required him to mount the train again when he attempted to do so, and the evidence shows that his attempt was made in the natural and usual manner, and the testimony of Porter himself, if accepted, shows that he knew the custom was to mount the train on the side next to the swtich, since otherwise he would not have called the plaintiff's attention to the cars standing on track No. 3, and have expressed a doubt that plaintiff would clear these cars. Apart from the evidence of Porter, we can discover no evidence of negligence on the plaintiff's part in not discovering the dangerous position of the cars on track No. 3. In *Choctaw, Oklahoma and Gulf R. R.* v. *McDade,* 191 U. S. 96, the plaintiff's intestate who was a brakeman on

the railroad was riding on top of a furniture car wider and higher than the average car and was killed as a result of being struck by an overhanging spout from a water tank. In affirming a judgment in favor of the plaintiff, the Supreme Court said: "The Court left to the jury the question of the assumption of risk on the part of McDade, with instructions which did not permit of recovery if he either knew of the danger of collision with the spout, or by the observance of ordinary care on his part, ought to have known of it. The servant assumes the risks of dangers incident to the business of the master but not of the latter's negligence. * * * Neither the assumption of risk nor the contributory negligence of the plaintiff below was so plainly evident as to require the jury to be instructed to find against the plaintiff, but, under the facts disclosed, these matters were properly left to the jury." In the case at bar, the facts disclosed, offer less support to the theory of assumption of risk, or of contributory negligence, than in the case last mentioned. That case was cited with approval in *P. B. & W. R. R. Co.* v. *Devers,* 101 Md. 342, where a watch box after being removed for repair was replaced, but negligently fixed nearer to the track so that it was struck by a passing engine and Devers was injured. This Court held that "he assumed the risks that were incident to the use of a box properly located, and such others as he knew or ought to have known by the exercise of reasonable care, but he did not assume the risk of a watch box placed without his knowledge so close to the track as to be liable to be struck by a passing train." An interesting discussion of the law applicable to a case where one riding on a car where his duty required his person to protrude beyond the car he was on, was struck by a stationary "cornered" car, will be found in *Kansas City, Memphis & Birm. R. R.* v. *Burton,* 12 So. Rep. 88, from the Supreme Court of Alabama, in which the same view was expressed as in the case from 191 U. S., *supra,* but more elaborately.

We do not think it necessary however to prolong this opinion by more than reference to it as well reasoned and as pre-

senting the precise question presented here, under circumstances almost the same.

For the reasons given the judgment will be affirmed.

*Judgment affirmed. Costs above and below
to be paid by the appellant.*