CHARLES M. CHRISTIAN ET AL. *v.* JOHNSON CONSTRUCTION COMPANY.
[No. 24, April Term, 1931.]

88

*Decided June 10th, 1931.*

90

 

The cause was argued before URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Chester F. Morrow* and *Theodore R. Dankmeyer,* with whom were *Niles, Barton, Morrow & Yost,* on the brief, for the appellants.

*Charles F. Obrecht* and *Lester H. Crowther,* with whom were *James T. O'Neill* and *Obrecht & Bauman* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

The Johnson Construction Company sold, and Charles M. Christian and Grace Christian, his wife, bought, the leasehold interest in four lots, with the buildings thereon, for the sum of $3,000. The contract was in writing and under seal, and was executed on April 1st, 1926. Ten dollars were paid when the contract was signed, and the residue was agreed to be paid in equal monthly installments of thirty-six dollars, payable on the first day of every succeeding month from the date of the agreement. The vendees were to pay interest on the purchase price, taxes, insurance, and all expenses, when legally demandable, until the whole of the purchase money was paid. It was further covenanted that, if the vendees should default in payment of any monthly installment, taxes, or legal expenses, and such default continued for a period of over thirty days, the default should be considered a breach of the contract, and the whole amount due on this contract should become due and payable; and, if not paid, the contract, at the option of the vendor, should be null and void, and all payments made should be retained by the vendor as rental for the premises. The contract concludes with the stipulation.that: "Upon the payment of the full purchase price together with the interest, the said party of the first part agrees to give to the said parties of the second part a good and merchantable deed at the expense of the parties of the second part."

The vendees entered in possession and paid on account the sum of $587, which was in full of the first payment and the monthly installments and interest to August 1st, 1927; but nothing more was paid, and on November 19th, 1928, the vendor brought an action on the contract to recover the amount of the unpaid purchase money with the interest due, taxes, and insurance. The plaintiff's cause of action on the contract was set forth in the seventh count of the declaration, to which the defendants demurred. The demurrer was overruled, and the defendants in their pleas pleaded by way of set-off that the contract was entered into by the defendants upon the express condition that the house on the lots sold should be in good order and condition and tenantable and fit for occupancy by them as their home, and that, after the contract was so entered into, the defendants took possession of the house thereon, and furnished the same with household furniture and effects, and attempted to live in and occupy said house as their home, but that said house was untenantable and unfit for occupancy by them as their home, because the roof and walls were not watertight, and so the rain came through in large quantities, and, after the repeated neglect and refusal of the plaintiff to make the house tenantable and fit to occupy as their home, the defendants rescinded the contract in the summer of 1928, and demanded from the plaintiff the return of the said sum of $587, which the plaintiff refuses to make. After the parties were at issue, trial was had and judgment entered on the jury's verdict, which was for the plaintiff in the amount of $3,000.67, or the amount apparently due according to the terms of the contract on the day suit was brought, less the credit of $587.

During the trial, there was no controversy over the fact that there had been a contemporaneous parol agreement with respect to the repair of the house by the plaintiff, and no question made of the admissibility of the evidence with reference to the conflicting versions of the terms of this parol agreement, and whether or not the plaintiff had made the repair as he had agreed by parol. Furthermore, the testimony on the part of the plaintiff and of the defendants in

support of their respective contentions with reference to the terms of the parol agreement and its performance or breach raised issues on these questions for the jury to find; and, under the plaintiff's third prayer and the defendants' second, the theory of each side on this branch of the inquiry was fully submitted. If, however, the defendants' contentions be sound, that, under the allegations of the declaration, the terms of the written contract, and the circumstances of the record, the plaintiff, in order to recover, must aver and prove that, before the suit was brought, it had tendered to the defendants a grant or deed of assignment of the leasehold estate, then the *nisi prius* court was in error in overruling the demurrer to the seventh count of the declaration, which did not contain an averment of such tender, and also in granting the plaintiff's third prayer, which did not require the jury to find the tender; and, moreover, the defendants' first prayer taking the case from the jury should have been granted, if it had not been defective in form by confining its demurrer to the evidence offered by the plaintiff instead of addressing it to all the evidence in the case. 2 *Poe, Pl. & Pr.,* sec. 295 B; *State. v. Balto. & O. R. Co.,* 69 Md. 343, 14 A. 685, 688; *Pennsylvania R. Co. v. Cecil,* 111 Md. 288, 73 A. 820; *Fidelity & Deposit Co. v. Panitz,* 142 Md. 300, 120 A. 713.

1. The defendants assert that it was necessary for the plaintiff to aver and prove either a delivery of the grant, or its tender and refusal, before the plaintiff had a right of recovery for the purchase money due. The assertion assumes that the covenants here of the vendor to grant the leasehold estate and of the vendees to pay the purchase price are mutual and dependent covenants, and that the obligation to make the tender was not waived. Neither of these assumptions is correct.

(a) The attempted incorporation of the terms of the contract in the seventh count of the declaration by reference and filing with the declaration is not good pleading, and, on demurrer, the contract will not be considered as a part of the count. The count in question does, however, set up a contract to sell by the plaintiff, and to buy by the defendant, a

certain leasehold property at a specified sum, with interest and the payment of taxes, insurance, and expenses; the delivery of possession to the defendants, and the ability and readiness of the plaintiff to transfer the title and to do all other necessary things; the failure of the defendants to pay for a period of over thirty days after default; and the fact that the defendants, after making numerous promises to pay the purchase money, finally notified the plaintiff that they were unable to perform their part of the contract by paying the amount due; and that, although repeatedly demanded, the defendants had refused to pay the money so demanded. Should it be assumed that the covenants to grant and to pay were mutual and dependent stipulations, and that a tender of the grant and an offer and readiness to perform may, in the first instance, have been a condition precedent to a right of action in the vendor for the failure of the vendees to have paid the purchase money, yet, since this tender was made useless by the refusal of the vendees to pay and by their notice to the vendor that they were unable to perform their part of the contract, a tender of the grant is dispensed with as a condition precedent to the right of the vendor's suit for the purchase money. A tender is not necessary where it appears that, if made, it would have been futile. The averments of the seventh count show that the plaintiff had an existing capacity to perform, but that his tender would have been a useless gesture, so the demurrer was rightfully overruled. *Citizens' National Bank v. Davisson*, 229 U. S. 212, 224, 33 S. Ct. 625, 57 L. Ed. 1153, 1159; 27 *R. C. L.*, sec. 254, p. 525, "*Vendor and Purchaser*." See *Bullen & Leake, Precedents of Pleading* (1868), pp. 246, 247; *Ragan v. Gaither*, 11 G. & J. 472; *Cole v. Hymes*, 46 Md. 181; *Rasst v. Morris*, 135 Md. 243, 108 A. 787. Compare *Scarlett v. Stein*, 40 Md. 512, 528; *East Vedado Corp. v. Adkins & Co.*, 157 Md. 416, 146 A. 385.

(b) The written contract of sale was offered in evidence, and its terms disclose that the contract price of $3,000, with interest, was payable in equal monthly installments until the whole of the purchase price was paid, and that meanwhile

the vendees were to assume the discharge of the taxes, insurance, and expenses; and, "upon the payment of the full purchase price together with the interest," the vendor agreed to give the vendees "a good and merchantable deed (*sic*) at the expense of the parties of the second part." So the contract to pay the purchase price was by a succession of equal monthly payments, and the covenant to convey is independent of such payments falling due, save probably the last, and a recovery may certainly be had for all the payments, with the likely exception of the last, without a tender of the deed by the vendor. With respect to the last installment, the weight of decision seems to be that the agreement to convey is dependent or concurrent, unless the terms of the contract prevent that construction. 27 *R. C. L.,* secs. 172, 173.

The action here is not for a particular installment nor yet for the final one, but upon the theory of a breach by the vendees of the contract, that occurred after they had paid but $587, which discharged the monthly installments to August 1st, 1927. From that date, the vendees declined to pay any further installments, and remained in default for more than thirty days. When this occurred, the stipulations of the contract expressly declared "such default shall be considered a breach of this contract on the part of the parties of the second part (*i. e.,* the vendees); and the whole amount due on this contract shall immediately become due and payable, and if not paid, this agreement at the option of the party of the first part (*i. e.,* the vendor) shall be null and void." So it was not necessary for the vendor to tender a grant to put the vendees in default. By the very terms of the agreement, the vendees were in default, and the immediate consequences were to accelerate the maturity of the whole residue of the purchase money, and to make this amount, without the tender of the deed as a condition precedent, immediately become due and payable. Hence affirmative action was forthwith cast upon the vendees, and, if they failed so to pay, there arose by the terms of the agreement the privilege or option of the vendor to declare the contract null and void or to enforce by action the payment of all of the unpaid purchase

price, which under the contract was immediately due and payable. In the situation brought about by the breach of the contract in failing or declining to discharge the mutual and independent obligation to pay, the reasonable purpose of the provision now under discussion, as well as the plainly manifested intention of the parties, was to give the vendor the privilege of rescinding the entire contract or enforcing at once the payment of the sum due without another precedent act. Should the vendees continue in default in the payment of a monthly installment for more than thirty days, it would obviously be an idle ceremony to require a tender to produce a second default, when there was subsisting one which had arisen, continued, and was the condition which made the entire purchase price "immediately become due and payable." *Loud v. Pomona Land, etc., Co.*, 153 U. S. 564, 576, 14 S. Ct. 928, 38 L. Ed. 822; 27 *R. C. L.*, secs. 168-173, pp. 454-461.

The cases cited on briefs have been carefully examined, and the conclusion here expressed is not, in our opinion, at variance with the principles there applied. As there was evidence, on the one hand, tending to show a full performance of the parol promise according to the plaintiff's theory of its terms, a delivery to defendants of possession of the premises sold, and an existing capacity, readiness, and offer of the plaintiff to comply with the written contract, and a refusal and inability of the defendants to pay as agreed, and, on the other hand, evidence tending to prove another version of the parol agreement, which was different in terms and was intended to be a condition of the sale, a nonperformance of this agreement by the plaintiff, and a rescission of the contract by the defendants because of such breach, and a demand for the refunding of the payments on account of the purchase price, the case could not have been withdrawn from the consideration of the jury; and, inasmuch as the respective theories of the testimony were submitted to the jury for their determination by the plaintiff's third and fifth prayers and the defendants' second and fourth prayers, there was no

reversible error in the court's rulings on these prayers and its rejection of defendants' first or demurrer prayer.

The only other prayer for review is defendant's third prayer, which asked that the jury be instructed that the statements or admissions made by the husband to the plaintiff, out of the presence and without the knowledge or consent of the wife, are not binding on the wife. The husband and the wife were the joint vendees and principals, and this prayer was properly refused because it ignored the testimony tending to show that the wife had constituted the husband her agent in the transactions had with the plaintiff in reference to the contract at bar.

2. There are eighteen exceptions to the rulings on the evidence. The defendants do not press the eighth, thirteenth, and fourteenth exceptions, and there is no error disclosed in these bills. There is nothing presented for review by the second bill of exceptions. The question was answered without objection, and no motion was made to strike out the testimony given. *Atlas Realty Co. v. Galt,* 153 Md. 586, 597, 139 A. 285.

The first exception was to the testimony that Charles M. Christian, one of the defendants, who had been an agent of the plaintiff in the sale of its improved leasehold lots, had been trying shortly before his purchase to make a sale of the property here in question for $3,300. The suit here was for the contract price, less the credits, and the value of the property was not in issue. The testimony was not relevant, but its admission worked no injury. By its third, fourth, fifth, sixth, seventh exceptions, and also in the second bill of exceptions, the plaintiff offered testimony tending to prove that it was able, ready, and willing to execute and deliver to the defendants a grant of the leasehold estate in the lots by a marketable title in accordance with the terms of the contract, and giving the reason for not preparing and offering to the vendees a grant of the leasehold lots. Such testimony was relevant and material on the question of capacity to perform what was undertaken by the contract. *Hazleton v. Le Duc,* 10 App. D. C. 379.

The *nisi prius* court refused to let the carpenter who had repaired the roof in August, 1926, but who had not since been in the house, although he daily passed by the front of the property, testify in reply to the question, "What is the present condition of that property?" This cross-examination did not relate to any matter brought out in chief. The trial was in September, 1930, and witness knew nothing of its then interior condition, and had been exhausted in reference to what he had observed with respect to the exterior. When Charles M. Christian, one of the defendants, was testifying in chief, he was asked: "What is the present condition of the house, what is the cause of its present condition?" and the court declined to allow this question to be put. The witness had testified, to the extent of his knowledge, both with respect to the condition of the premises and to its cause; that was the reason assigned by him for his refusal to complete the purchase.. The questions excluded were general in their form, and directed to the condition at the time of trial, without reference to whether or not the plaintiff was responsible or to whether the witness was qualified to testify to the cause of the then existing state of disrepair. So the court does not see any reversible error in these two rulings, which are the occasions of the ninth and twelfth exceptions. Compare the ruling in *Lohmuller Bldg. Co. v. Barrett,* 146 Md. 617, 629, 127 A. 482, where the circumstances were different.

One of the attorneys for the plaintiff gave testimony of his conversation with Charles M. Christian, a defendant, that was taken subject to exception. At its conclusion a general motion was made to strike out all of the evidence so received, but the court refused, and this ruling constitutes the tenth bill of exceptions. The attorney's testimony was in the form of a series of questions and answers, whose substance was that Christian stated that he had instructed his solicitor to obtain a loan of $2,300 on the property, so that he could pay the plaintiff, provided the plaintiff would take a second mortgage for the residue of the debt; and that during this interview Christian did not say anything about any leaks in

the roof or make any other complaint about the house. The objection raised is that this testimony is inadmissible because the statements of Christian were made in negotiations for a compromise.

There is nothing in this evidence nor in the preceding testimony of the witness to suggest that the admission was made in the course of an attempt to compromise a controversy for a less sum of money than demanded, nor was the admission made on the hypothesis that the plaintiff would be making an abatement in its demand by accepting the proposed method of payment. What the defendant said was unconditional, and was an admission of the plaintiff's entire demand, and the outline of a plan to discharge the obligation in full. At no time during this meeting did the defendant interpose any denial of the indebtedness to plaintiff. 2 *Wigmore on Evidence* (2nd Ed.), sec. 1061; *Caledonian Fire Ins. Co. v. Traub*, 86 Md. 86, 96, 97, 37 A. 782; *Pentz v. Pennsylvania Fire Ins. Co.*, 92 Md. 444, 448, 48 A. 139; *Kalus v. Bass*, 122 Md. 467, 475, 89 A. 731, Ann. Cas. 1916A, 985.

The eleventh exception is similar to the tenth, and the ruling was not erroneous for like reasons. The fifteenth exception is the next one remaining, but it is not important, because the objection was to the form of the question, and the same evidence was later given without objection.

Towards the close of the testimony, the court suggested that counsel for the parties withdraw to his chambers for a conference. In this privacy the court called attention of counsel to the conflict between the testimony of Charles M. Christian and that of Charles F. Obrecht, Esq., of counsel for plaintiff, in regard to their conversation at an interview in Annapolis; and suggested that Christian should be called to the stand and Obrecht's testimony should be read to Christian by the stenographer, and he be asked to say whatever he might desire in reference to this conversation. The court added that Christian would not be recalled if plaintiff objected. No objection appears on the record to have been made in the conference to the proposed action of the court,

and the trial was resumed and Christian called to the stand. The court explained to the witness that Obrecht had testified at length, at the close of the afternoon session of the preceding day, and that, because of the noise in the courtroom coming through the open windows, the extreme heat, and the lateness of the hour, it was quite possible that the witness had not heard everything that Obrecht had testified with regard to the Annapolis interview. The court then stated that the witness had testified that morning to the effect that their interview was not a real business discussion, but a short conversation of a frivolous nature, and that the stenographer would read Obrecht's testimony slowly to the witness and he should listen carefully, take time to consider, and say anything that he might desire with respect to the conversation. The record was then read, and to the court's inquiry if the witness had anything to add to his testimony of that morning, the witness answered at length, but in effect that he had no change to make, and proceeded to speak about another interview with a different person. The court interrupted him with the comment that he was asked if he wished to add or subtract anything from his testimony in reference to the Annapolis conversation, and the court understood his answer to be a denial of what Obrecht had testified about the nature of the conversation, which the witness reaffirmed was merely of a frivolous nature; and to the question if the court's understanding of his testimony was correct, Christian replied in the affirmative. The sixteenth, seventeenth, and eighteenth exceptions were reserved to the court's explanation when the witness was recalled; and to the court's two inquiries addressed to the witness. The record shows that the action of the court originated in a desire to correct the adverse conditions existing when Obrecht testified, so that Christian might give his testimony in contradiction after his recollection had been refreshed by listening to a reading of Obrecht's testimony under circumstances which would assure his hearing and understanding all that Obrecht had testified to on the stand. In the procedure adopted, the court pursued a fair and impartial course, with no other motive than that even

justice be done. The matter was largely in his discretion, and the court perceives nothing in his actions so prejudicial to the defendants as would call for a reversal on these three bills of exceptions. See *Snowden v. State,* 133 Md. 624, 634, 635, 106 A. 5.

The twentieth and twenty-first exceptions were not well taken, as the action of the court in both instances was in the exercise of its duty to confine the argument of counsel within proper bounds. *Balto. & O. R. Co. v. Boyd,* 67 Md. 32, 42, 10 A. 315.

After the verdict was rendered for the plaintiff, a motion for a new trial was made, and, when heard, the court stated the motion would be held open until such time as a proper deed had been tendered to the defendants and their interests protected to the satisfaction of the court. On November 3rd, 1930, in the presence of the court, the plaintiff produced for delivery to the defendants a duly executed grant of the lease-hold interest sold, and exhibited a release of the mortgage lien on the premises, so as to assure to the defendants the merchantable title agreed to be conveyed, and then stated that the grant would be held by the counsel for plaintiff for delivery to the defendants or their proper representatives upon payment of the judgment when entered. The counsel for the defendants stated that they "neither accept nor refuse the deed, but except to the tender of the deed at this time and in this manner"; and thereupon the court overruled the motion for a new trial, and extended the judgment on the verdict. The effect of these proceedings would seem to have left the grant in escrow with plaintiff's counsel, and the release of the mortgage lien in their custody. It does not appear whether or not the release had been recorded, which would be the obligation of the vendor, and it is preferable that the deed be in official, rather than private, custody; so a stay of execution of the judgment should be entered until the mortgage lien in question be released of record and a good and sufficient deed from the vendor to the vendees for the leasehold property be deposited with the clerk of court for delivery to the vendees on the payment of the said judg-

ment, interest, and costs. *Maupin on Marketable Title to Real Estate* (3rd Ed.), sec. 88, p. 219; *Kendrick & Roberts v. Warren Bros.*, 110 Md. 47, 73, 74, 72 A. 461; Code, art. 26, sec. 14.

The only other question remaining is a motion to dismiss the appeal. The judgment was entered on November 5th, 1930, and the appeal was taken on December 16th, 1930, and the record had to be filed with the clerk of this court on or before March 16th, 1931, and was filed on March 5th. Code, art. 5, sec. 6. The regulations for the preparation and signing of bills of exceptions in Baltimore City are prescribed by the Acts of 1924, c. 338 (an amendment of the Acts of 1916, c. 625), as construed by this court. *Flack's Code of Public Local Laws*, vol. 1, art. 4, sec. 323. The statute provides that the appellant, or his counsel, shall submit the bills of exceptions to the appellee, or his counsel, not less than thirty-five days before the time that the record must be filed in the Court of Appeals, for the purpose of amendments or additions. A literal compliance with this provision and other terms of the statute would have required a submission to the appellee or his counsel on or before February 9th and a signing of the bills of exceptions by the court not later than February 24th. These provisions, however, are directory and not mandatory, and the original draft of the bills of exceptions was handed to counsel for appellee on February 20th, 1931, and application was made by appellants for an extension of the time for the signing of the bills of exceptions. The grounds assigned were that there was a delay in having the testimony transcribed because the appellants, having informed their counsel that the funds for this work would be provided, assumed that the work would commence without the money being prepaid, and so did not provide the funds until February 17th, 1931; and further, the counsel for the appellee had declined to return the draft of the bills of exceptions until the expiration of ten days for examination, which made it impossible for the exceptions to be signed by February 24th. This petition was verified, and, after a hearing of the parties, the court passed an order on

102

February 20th, 1931, extending the time for signing the bills of exceptions to March 6th, and they were signed on March 5th. The appellee was not injured by this action, as its counsel, after opportunity for examination, addition, and alteration, approved of the form of the bills of exceptions before they were signed. Moreover, the court had the power to grant the extension, and, under the prevailing practice, it cannot be said that the exercise, after a hearing of the parties, of his discretion, was so arbitrary in character as to require this appeal to be dismissed. The whole matter has been so recently and fully considered that only a reference to the controlling precedents will be given. *State, use of Thompson v. Emerson & Morgan Coal Co.,* 150 Md. 429, 434, 435, 133 A. 601; *United States Fid. & Guar. Co. v. Williams,* 148 Md. 289, 296, 297, 129 A. 660; *Stiegler v. Eureka Life Ins. Co.,* 146 Md. 629, 657, 127 A. 397; *Middendorf, etc., Co. v. Milburn Co.,* 137 Md. 583, 594, 113 A. 348; *Wegefarth v. Weissner,* 132 Md. 595, 106 A. 854.

> *Motion to dismiss appeal is refused, with costs of motion to the appellants, and judgment affirmed, with other costs to the appellee, and the cause to be remanded for the granting of a stay of execution until the mortgage lien on the leasehold lots sold be released of record and a good and sufficient deed from the vendor to the vendees for the leasehold property sold be deposited with the clerk of the trial court for delivery to the vendees on the payment of the said judgment, interest, and costs.*