JOHNSON et al. v. R. S. CONST. CO., Inc.

No. 4105.

United States District Court
D. Maryland.

Nov. 9, 1948.

John J. O'Connor, Jr., of Baltimore, Md., for plaintiff.

Thomas J. Kenney, of Baltimore, Md., for defendant.

CHESNUT, District Judge.

In this case the plaintiffs, private individuals, sue the defendant under the Emergency Price Control Act, 50 U.S.C.A. Appendix, § 925(e), for treble damages for overcharges of rent. The plaintiffs allege a landlord and tenant relationship between the parties. This is denied by the defendant's answer. The case has been heard principally on a written stipulation of facts supplemented, however, by oral evidence given by the attorney for the defendant, a corporation.

The material facts may be very briefly stated. The defendant is a Maryland corporation which, since 1934, has been extensively engaged in the purchase and sale of real estate in Baltimore City. The sales are generally made on the basis of a payment by the purchaser of a comparatively small deposit with weekly or monthly payments of a certain amount thereafter calculated to run for a period of about eight years before final completion. Such an arrangement is quite similar to so-called building association mortgages.

In June of 1947 the defendant purchased a three-story eight-room brick dwelling house known as No. 912 East Eager Street in Baltimore City, and shortly thereafter advertised the house for sale. In response to the advertisement the plaintiffs negotiated for the purchase of the house and under date of August 16, 1947 entered into a written contract with the defendant to buy the house subject to a ground rent of $72. per year, for $4250. of which $200. was paid, with $50. further payable on November 16, 1947, and $15. per week thereafter, the weekly payments to be applied to the payment of taxes, ground rent, insurance and all other charges against the property, and to interest on the balance of the purchase price, and the balance to be applied to the principal of the purchase money.

The contract further provided that if the vendees made default in the weekly payments the vendor could consider the agreement ended and the payments theretofore made should belong to it and be held as rent for said property, and treated as liquidated damages. There was a further provision that, in the event of default, the vendor—

"may at his option consider the purchaser as a tenant of the said property on the weekly or monthly rent, and shall be entitled to the benefits of all provisions of the law for the speedy recovery of the possession of the land and tenements held over by the tenants in the City of Baltimore, as provided by the Code of Public Laws of Maryland, Art. 4, §§ 844 to 864, inclusive, and Art. 53 of the Code of Public Laws of Maryland, and to other provisions of the law in force, including five days' eviction notice, including summary ejectment after five days' notice, and to any further provisions which may be enacted in the future."

The purchasers entered into possession of the property immediately and thereafter until June 12, 1948, made most of the weekly payments (with some irregularity) amounting in all to $550. On June 30, 1948 the defendant wrote the plaintiffs calling attention to an existing default and asking for at least two weeks payment at once. There being no compliance by the vendees, the vendor, in accordance with the

remedial provisions of the contract, filed a complaint for summary ejectment in the People's Court of Baltimore City with notation of default in the amount of $170. unpaid *rental.* On the same date the defendant by registered letter wrote to the vendees saying that their account was $170. in arrears and that their failure to cooperate had made it necessary to institute legal proceedings for eviction; but saying "you may save the situation, however, if you will call at our office immediately upon receipt of this letter, and bring your account to date". On the day set for the hearing in the ejectment proceeding, the parties appeared by their respective attorneys who conferred about the matter before the case was formally called for hearing. The stated position of the attorney for the vendor was that the proceeding had been brought to obtain some reasonable disposition of the matter as the vendees had failed to cooperate. On behalf of the vendor he offered to return the deposit made and rescind the contract, or to modify the contract if the vendees found the weekly payments too large to meet. But the stated position of the vendees was that they were entitled to $1530. damages, under the Emergency Price Control Act because the ejectment notice had been given to them. The damages were calculated on the basis that in 1942 the premises had been registered by a former owner with the OPA Office at the rate of $20. a month for rental; that they had paid $510. (apparently including the initial down payment of $200) in excess of that lawful rental and were entitled to receive $1530. as treble damages. Thereupon the attorney for the vendor dismissed the case in the People's Court, over the protest of the attorney for the vendees, as the experienced trial judge in that court held the plaintiff in that case had the right to do. Thereafter on July 24, 1948 the vendor again wrote the vendees calling attention to the existing default under the contract and expressing the desire to give the vendees further opportunity to complete the contract "without regarding fully some of the terms of the contract regarding defaults" and saying that if on or before August 4, 1948 the vendees would complete the payments under the contract, the vendor would hold open the contract until that time; "otherwise we may be forced to take advantage of the default provisions". But on August 3, 1948 the plaintiffs filed the present suit. Thereafter and up to the present time the plaintiffs have continued to occupy the premises (presumably claiming to be tenants) without further payment indefinitely or until, as it was expressed, they have worked out the "equity".

The OPA Rent Regulations contain a general provision against attempted evasion of maximum rent orders or regulations; but there is no evidence in this case tending to show that the contract of sale was in any way evasive of rent regulations; and indeed plaintiffs' counsel makes no such contention in this case. On the contrary the contract on its face, and so far as the evidence goes in accordance with the full intention of the parties, was a bona fide contract of sale made in due course of the defendant's business and similar in all respects to many other contracts of the same general nature, and indeed carrying the same customary provisions which had been used by the defendant in its business since 1934 and therefore, of course, many years before the existence of the Emergency Price Control Act of 1942. And it may be added, as stated by counsel for the defendant, that this form of installment contract had many years ago been prepared by the late Judge Stein who, before becoming a judge of the Supreme Bench of Baltimore City, had a very extensive legal practice in real estate matters of this kind. The expression in the contract that the vendees, if in default, might be treated as tenants for the purpose of the local summary ejectment procedure, did not make the contract of sale, a lease subject to the OPA Regulations. Bowles v. Strano, D.C. Pa., 62 F.Supp. 9; Moss v. Williams, Cal. App., 191 P.2d 804.

This installment contract for the sale of real estate was valid in accordance with Maryland law, and there is no evidence to show in this case that it was in any way an unreasonable or even improvident contract for the vendees to make, or

that the weekly payments provided for were at the time not within the reasonable financial ability of the vendees. It does not appear that their default was due to an oppressive contract but rather to their unfortunate subsequent inability to comply with its provisions. Recently there has been some discussion as to whether installment contracts of this kind are too favorably worded for the vendor because the default of the vendee may entail too heavy a forfeiture. See Vol. 9 Maryland Law Review, pp. 99, 118. On the other hand, contracts of this general nature have often proved beneficial in that they enable persons without sufficient capital to buy and own their own homes by paying for them in installments over a period of years. The stipulation of facts in this case supports this view in that it appears since 1934 the defendant corporation has sold between 650 and 700 properties by means of the same type of contract of sale involved in this case, with only about 20 cases in which it has been necessary to eject the vendees. But whatever may be thought as to the economic wisdom of installment contracts of this nature, they have been for many years and presently are entirely valid under Maryland law. Spellman v. Dundalk Co., 164 Md. 465, 165 A. 192; Christian v. Johnson Construction Co., 161 Md. 87, 155 A. 181.

The legal contention of the plaintiffs may be shortly stated. It is pitched entirely upon the supposed effect of the ejectment proceeding in the Peoples Court of Baltimore City, despite the voluntary dismissal thereof by the defendant in this case. The argument submitted is this: (1) The institution of the ejectment proceeding constituted an *irrevocable* "election" by the defendant (the vendor in the contract of sale) to make the relationship between the parties that of landlord and tenant instead of vendor and vendees; (2) that the effect of the election was *retroactive* and made the relation of the parties those of landlord and tenant *ab initio;* (3) that all previous payments, including the initial deposit of $200. must be treated as rent and (4) so treated, the aggregate rental paid was $510. in excess of the registered rent in 1942 and (5) therefore the plaintiffs in this case are entitled to recover treble damages in the amount of $1530.

The argument is ingenious but in my opinion entirely unsound as sought to be applied to this case. Counsel for the plaintiffs has submitted an extended brief with many citations in support of the legal propositions that an "election" of remedies once deliberately made is a bar to a subsequent *inconsistent* position, and that provisions in contracts of sale of real estate to the effect that in the event of default by the vendee the vendor may treat the vendee as a tenant for the time that he has been in possession, are valid. For the purposes of the decision here these abstract legal propositions may be accepted as generally correct without meticulous analysis of the particular factual situations in which they have been considered or applied by the court. While the argument is seemingly logical in an abstract way, it is at least highly technical and artificial and could not reasonably be applied in the instant case. Bowles v. Strano, D.C., 62 F.Supp. 9.

The whole case is based on the ejectment notice. Quite obviously this was not given by the vendor for the purpose of creating or continuing a tenancy of the premises, but on the contrary, for the purpose of terminating the relationship between the parties by reason of the vendees' own default under their contract. It was merely the exercise of a remedy given by the contract to the vendor in the event of a default by the vendees. To treat the exercise of a summary remedy agreed to by the plaintiffs in the event of their default, although quickly dismissed, as a considered action by the vendor to create a legal relationship of the landlord and tenant *ab initio,* which was directly contrary to the intention of the parties, seems wholly untenable. It is an attempt to legally alchemize a mutually intended relationship of vendor and vendee into a unintentional relationship of landlord and tenant *ab initio.*

Even from the strictly technical standpoint the mere ejectment notice given by the vendor did not constitute an election of remedies with the effect of estopping the vendor from asserting in this case that the case was one of sale and not of

lease. The argument submitted is that the mere filing of the ejectment suit was an irrevocable and conclusive election despite the fact that it was promptly and voluntarily dismissed without trial and without prejudice of any kind to the vendees. Even if the doctrine of election was otherwise applicable here, it would at least be very doubtful as a matter of law whether it would be conclusive, on the more modern authorities. See 28 C.J.S., Election of Remedies §§ 14, 15, pages 1087–1091; Williston on Contract & Rev.Ed. Vol. 3, p. 1978; Vol. 5, p. 4281. See also United States v. Oregon Lumber Co., 260 U.S. 290, 43 S.Ct. 100, 67 L.Ed. 261. But however that may be, the doctrine is not properly invoked here against the vendor. The doctrine of election of remedies is applicable only where the remedies are inconsistent, and in view of the fact that the contract here involved was a bona fide contract for the sale of land which granted to the vendor the right of summary ejectment upon a default by the vendees, the legal conduct of the vendor has at all times been consistent, even when tested by more liberal standards of consistency than that called for by the doctrine of election of remedies. In filing suit for summary ejectment, the vendor was merely exercising one of the two remedies available to it upon a breach of the contract by the vendees, which remedies were: (1) a suit for specific performance or (2) suit for summary ejectment, by which latter action the payments previously made were considered as liquidated damages. Only by prosecuting one of those two inconsistent remedies to judgment would the vendor have made an election. Moreover, the vendor's action in suing for summary ejectment is consistent with its contention here, which I have found to be correct, that the contract was a bona fide contract of sale, for by so doing it was merely selecting one of the two remedies available to it, which remedy was granted to it by the contract in lieu of a common law action in assumpsit for breach of contract. Both in the People's Court and in this Court, and by its actions, the defendant, in view of the terms of the contract,

has proceeded on the sound legal theory that the contract between it and the plaintiffs was a bona fide contract of sale and that their relationship was that of vendor and vendee. If there is any inconsistency in legal positions, it would seem that it is in the position of the plaintiffs, for if the tenuous legal argument advanced by their counsel is correct, they would stand to profit from their own breach of the contract. Such a result, if nothing else, belies the position for which they contend.

■ Moreover, the doctrine of election of remedies is an equitable one designed to be used as a shield for defense and not as a sword for attack, and, as an equitable doctrine, it cannot be properly used as an instrument of oppression. "It has been said that the doctrine is a harsh rule which is not to be extended". 28 C.J.S., Election of Remedies, § 1, page 1058; · Petillo v. Stein, 184 Md. 644, 652, 42 A.2d 675; Oil Well Supply Co. v. First National Bank, 10 Cir., 106 F.2d 399.

But even more importantly, the plaintiffs' contention cannot be supported as within the intention of Congress in the Emergency Price Control Act. The well known purposes of this Act were to prevent abnormal increases in rental occasioned by conditions of the war. To apply the abstract legal propositions with regard to the election of remedies, and create an artificial legal situation imposing a substantially heavy penalty upon the defendant as a result of exercising a remedy agreed to by the plaintiffs and occasioned by their own default, would serve no useful purpose in the promotion of the policy of the Emergency Price Control Act. Counsel for the plaintiffs does not cite any federal or Maryland judicial decisions in support of his contention, and I know of none.

For these reasons, I conclude that the plaintiffs have not shown any violation of the Emergency Price Control Act by the defendant and the complaint must be dismissed with costs.

Counsel may submit the appropriate order in due course.