## JOHN M. SHEA ET AL. *vs.* MARIE M. EVANS.

*Specific Performance—Restrictions as to Use of Land Not Known to Purchaser.*

When a vendor of land does not inform the purchaser that there are restrictions relating to the character of buildings that may be erected upon it, and their location, which may affect its market value, and the purchaser is not aware of the existence of such restrictions, specific performance of a contract to purchase the land will be refused.

*Decided January 20th 1909.*

Appeal from the Circuit Court No. 2 of Baltimore City (GORTER, J.).

The cause was argued before Boyd, C. J., Briscoe, Pearce, Schmucker, Burke, Thomas, Worthington and Henry, JJ.

*John J. Hurst* and *John Grason*, for the appellants.

*Wm. S. Bansemer* and *Stevens T. Mason*, for the appellee.

Boyd, C. J., delivered the opinion of the Court.

This is an appeal from a decree dismissing the bill filed by the appellants against the appellee, which sought to compel the latter to specifically perform a contract for the purchase of sixteen lots laid out in what is called Ruxton Heights in Baltimore County. The only written evidence of the contract is an account stating that Mrs. Evans bought of McGuire and Shea, sixteen lots at Ruxton Heights known as Nos. 1, 2, 3, etc., (giving the number of each), stating the consideration to be $3,000.00, crediting that "By cash on account of sale $50.00" and showing balance due $2,950.00. That was signed by Mrs. Evans and was dated Oct. 22, 1907.

It will be observed that the contract is very meagre—not stating when the balance of the purchase money was to be paid, where the description of the lots could be ascertained, whether there is a plat on record, or the character of title held by the vendors. Some testimony was taken as to the value of the lots, but in the view we take of the case it will be unnecessary to discuss that. The defense mainly relied on by the defendant was that the plaintiffs made such misrepresentations to induce her to purchase, that a Court of Equity should not specifically enforce the contract, if otherwise binding. It is proper to say that the plaintiffs deny that charge, and claim that the defendant had every opportunity to inform herself of the actual condition of the property. The lots were advertised for sale at public auction on September 28, 1907, and the appellee seems to have been first attracted to them by that advertisement. She together with some others was present at the appointed time, but the weather was very bad, and no sales were made. Afterwards the appellants

sought to interest the appellee in the lots. Mr. McGuire, one
of them, dealt with her, persauded her to go over the prop-
erty at a later time, and sold her the lots stated in the account.
He endeavored at first to get her to give $300 for each lot,
with ten per cent. discount for cash, then $4,000 for the
sixteen, afterwards $3,500 and finally accepted her offer of
$3,000.00. He then made out the account and had her sign
it. Two days later the two appellants and the appellee went
to the office of Mr. Bansemer, who was her attorney, and Mr.
Shea handed him a memorandum of restrictions to go in the
deed, which was as follows: "That no part of any building
shall be erected nearer to the avenue or street front than fif-
teen (15) feet; that no barn, stable, coop, or other outbuild-
ing shall likewise be erected nearer to the avenue or street
front than fifty (50) feet."

Afterwards Mrs. Evans called on Mr. McGuire and said
she wanted a provision inserted in the deed that Maywood
Avenue was to be macadamized, which he said was not neces-
sary, and then she referred to the fact that there was no elec-
tric road there, and finally demanded the $50 she had paid
them. The next morning Mr. Bansemer notified Mr. Mc-
Guire that Mrs. Evans had decided "to cancel that contract,"
to use the language of the witness. She claims that mis-
representations were made as to an electric road to be con-
structed, as to macadamizing the avenue, and as to certain
proposed purchasers for some of the lots. But what seems
to us to be the most material objection to the enforcement of
the contract is the fact that the use of the property is subject
to a number of restrictions, which are not shown to have been
brought to her attention before she made the purchase or to
have been agreed upon by her. The following admission · is
stated in the record:

"NOTE.—It is admitted by counsel for the plaintiffs, at the
request of counsel for the defendant, that the restrictions
under which the title to the lots in question must be conveyed
by the plaintiffs, are as follows, to wit: 'That the parties of
the second part, the vendee, will not at any time within fif-

teen years from the day of the date of the deed for said premises, erect or build, or cause or permit to be erected or built, upon said premises, or any part thereof, any hotel, tavern, drinking saloon, blacksmith, carpenter or wheelwright shop, steam mill, tannery, slaughter house, skin drying establishment, livery stable, glue, soap, candy or starch manufactory, or use for any offensive purpose or occupation; that no part of any building shall be erected nearer to the avenue or street front *from* fifteen feet; that no barn, stable, coop or other outbuilding shall likewise be erected nearer to the avenue or street front than fifty feet; and that no dwelling house costing less than two thousand dollars shall be erected or built upon said premises within fifteen years from the date of the deed that may convey the aforesaid premises to the vendee.' "

It is true Mr. Shea swore that on the day the lots were offered at public auction he told Mrs. Evans of the various restrictions, but she positively denied any knowledge of them. Mr. McGuire, who had most of the dealings with her, admits that he did not tell her, and said that so far as he knew, she never saw the memorandum first above quoted until it was given to Mr. Bansemer. It is certainly remarkable that even when they went to counsel to have the deed prepared the memorandum then given did not include some of the most important restrictions which it is now admitted "the title to the lots in question must be conveyed" subject to. Another striking fact is that both the advertisement of the sale of lots when offered at public auction, and the account which Mr. McGuire took the precaution to have Mrs. Evans sign are silent on the subject of the restrictions. It is clear that the plaintiffs failed to establish that Mrs. Evans either agreed to take the property subject to such restrictions, or had any notice when she entered into the contract that the lots were to be so subject. It cannot be denied that some of the restrictions might affect the market value of the lots and might prevent a sale of some of them. It is doubtless true that many neighborhoods are made more attractive by having some such restrictions as these, but whether they are desira-

ble must depend largely upon the character of the settlement. The prohibition of the erection of a hotel, blacksmith, carpenter or wheelwright shop, steam mill or livery stable, not to mention some of the other buildings named, would prevent some persons from purchasing, and to prohibit the erection of a dwelling house costing less than $2,000 might deter others from buying lots. That minimum is ten times what the appellee was to pay for each lot. Another peculiarity is that the restrictions are for fifteen years from the date of the deed. The testimony is that these lots had been laid out for about sixteen years, and it may be that some of them were sold years ago, and may now or soon be free from such restrictions, while those involved in this transaction would continue to be so for fifteen years.

But whatever the effect of such restrictions may actually be, the Court cannot say that they will not affect the value of the lots, and Mrs. Evans cannot be required to accept them, subject to the restrictions, in the absence of more satisfactory proof that she had agreed to them, or knew of their existence. Vendors owning lots with restrictions such as these must inform purchasers of them, or see that they are aware of them, if they want Courts of Equity to enforce such contracts. When a contract for sale of land has nothing more in it than there is in this, a Court of Equity if called upon to enforce it by the vendor, will require him to have a good marketable title, and the same principle would demand that it be free from such restrictions as would likely affect its value, in the absence of satisfactory proof that it was known by the vendee that the property was to be conveyed subject to them.

In *Gill* v. *Wells,* 59 Md. 492, JUDGE MILLER said: "It is a principle, obviously just, in the law relating to the specific performance of contracts, that the vendee is entitled to have that for which he contracts before he can be compelled to part with the consideration he agreed to pay. He is not bound to take an estate fettered with incumbrances by which he may be subjected to litigation to procure his title; and in a contract such as is sought to be enforced in this case, the

vendee is not bound to accept anything short of an unincumbered legal estate in fee, the title to which is free from reasonable doubt." Or as said in *Dobbs* v. *Norcross,* 24 N. J. Eq. 327, and quoted with approval in *Gill* v. *Wells:* "He shall have a title which shall enable him not only to hold his land, but to hold it in peace; and if he wishes to sell it, to be reasonably sure that no flaw or doubt will come up to disturb its marketable value."

That restrictions such as these would prevent a Court of equity from decreeing the specific performance of a contract for sale of lands subject to them, is shown by the decisions in *Halle* v. *Newbold,* 69 Md. 265; *Newbold* v. *Peabody Heights Co.,* 70 Md. 493; *Peabody Heights Co.* v. *Wilson,* 82 Md. 186, and others that might be cited. In *Halle* v. *Newbold,* after holding that a grantor could impose a restriction in the nature of a servitude or easement upon the land that he retains, for the benefit of that he sells or leases, etc., it was said that: "Such servitude is an encumbrance upon the land upon which it is imposed and the title of the owner of the land is not clear." We are relieved from discussing the question whether such restrictions are binding upon purchasers who take with notice, as the above cases have settled that, and in this case we have seen from the admission made of record that the lots must be conveyed subject to the restrictions named.

So without discussing other questions raised, we will affirm the decree upon this ground. We are somewhat at a loss to know why this defense was not distinctly made in the answer, but there was evidence on the subject, which was not excepted to, and being thus brought to the attention of the Court, the contract should not be enforced by a Court of Equity.

> *Decree affirmed, appellants to pay the costs, above and below.*