CLEVELAND R. BEALMEAR *vs.* LOADER JAMES
AND ELIZABETH JAMES, HIS WIFE.

*Building Restrictions—Waiver—Specific Performance—Doubt-
ful Title.*

Building restrictions covering a large tract of land will not
be presumed to have been abandoned or waived as regards prop-
erty in a particular block therein, merely because the owners.
of land in such block have not sought to restrain violations of
the restrictions as regards property in other blocks, by which
violations they were not injured or affected.          p. 277

The abandonment or waiver of a building restriction may
be shown by parol, since it is largely a matter of intention, but
will not be presumed because the owner of property for the
benefit of which the restriction was created fails to take steps to
prevent violations which do not affect his property.      p. 277

In a suit for the specific performance of a contract for the
sale of a lot, the court cannot undertake to determine the
rights of lot holders generally as regards the waiver or aban-
donment of building restrictions created as regards all the prop-
erty in that vicinity.                        * p. 278.

A reasonable doubt as to the vendor's title, by reason of the
possibility of the enforcement of building restrictions by own-
ers of other lots in the same block, is ground for the refusal of
a decree for specific performance at the suit of the vendor.
p. 278.

In a suit by a vendor for the specific performance of the
contract of sale, in which he covenanted that the lot in ques-
tion was free from building restrictions, it was proper to refuse
him relief, when it appeared that such restrictions had been
created covering an extensive tract, including the lot in ques-
tion, and that they had been observed in the immediate vicinity
of that lot, though there had been a few violations in other
parts of the tract.                        pp. 278, 279.

*Decided January 23rd, 1925.*

Appeal from the Circuit Court No. 2 of Baltimore City (STEIN, J.).

Bill by Loader James and Elizabeth James, his wife, against Cleveland R. Bealmear, for specific performance. From a decree for plaintiffs, defendant appeals. Reversed.

The cause was argued before BOND, C. J., PATTISON, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*C. Alex. Fairbank, Jr.,* for the appellant.

*Harry M. Benzinger,* with whom was *Henry H. Dineen* on the brief, for the appellees.

OFFUTT, J., delivered the opinion of the Court.

Loader James and Elizabeth, his wife, on October 26th, 1922, entered into a written contract with Cleveland R. Bealmear for the sale of a lot of ground at the southwest corner of Roland Avenue and Merryman's Lane, in what is now known as Hampden, in that portion of Baltimore City known as the Old Annex. The contract contained a provision reading as follows: "It is understood there is no title restriction or zoning restrictions as to store-front improvements on said lot."

The vendee refused to comply with the terms of the contract on the ground that the lot in question was subject to certain building restrictions known as the "Hampden Association restrictions" established and provided for by the constitution and by-laws of the Hampden Association. The vendors contend that these restrictions have long since been abandoned and did not at the time of the contract affect the property in question. The vendors, relying upon that theory, filed in Circuit Court No. 2 of Baltimore City their bill of complaint against the vendee, setting out the facts to which we have referred and asking for a specific performance of the contract of sale. The vendee answered setting up as

a ·defense to the suit the restrictions referred to and testi-. mony was taken in connection with these pleadings. At its conclusion ' the court decreed that the contract of , sale be specifically enforced and from that decree this appeal has been taken.·

It appears from the evidence that in or about 1857, in a case pending in the Circuit Court for Baltimore County between John N. McJilton and others and Sarah A. Mankin and others, an instrument called the constitution of the Hampden Association was filed. Just what that suit was, or in what connection the instrument referred to was filed, or what rights the persons executing it or assenting to it had. at that time to encumber the property referred to in it, does. not appear. It does appear, however, from the instrument itself that the purpose of the association was the purchase of about four hundred and fifty acres of ground, then known as the property of Gen. Harry Mankin, which includes a large part of what is now the town of Hampden, a part of Baltimore City, and by that constitution that property was. to be laid off in streets and avenues and lots, and all the lots were to be subject to these restrictions; that is, the buildings to be erected on the lots were to be set back at least twenty feet from the line of Central Avenue, now known as Roland' Avenue, and the portions of other avenues eighty feet wide and fifteen feet from the line of narrower avenues, and no slaughter house or anything that might be regarded by the trustees as a nuisance was to be allowed on the premises, nor any distillery or manufactory of lager beer or other liquor,. nor place for the sale of intoxicating liquors.

These restrictions are said to· have been embodied in the deeds to the purchasers of the several lots into which the whole tract was divided, but how the covenants ran or to whom they ran or in what form they were is not disclosed. It is not contended, however, that these covenants. were not valid, or that they did not run with the land,. or that the several lot holders were not privileged to insist upon their observance *inter sese.* Manifestly we could not

pass upon those questions upon the facts before us and for
the purpose of this opinion, but without so deciding, we will
assume that these covenants were valid and enforceable *inter
sese* by the purchasers of the lots into which the Mankin
property was divided.

The real contention of the vendors was that these restric-
tions had been abandoned and that the lot owners had so far
and so long acquiesced in a disregard of the restrictions that
they cannot now be heard to insist upon their enforcement.

The evidence in the case, including a number of photo-
graphs, shows that the restriction which required buildings
on lots on Central, or Roland Avenue, as it is now known,
to be at least twenty feet from the street, has been in a num-
ber of instances violated, but on the other hand it shows that
in the block in which the particular lot under consideration
here is located there have been no violations of the restric-
tion, and it does not appear that persons owning lots in that
block have been in any way injured or affected by the vio-
lations, and it cannot be assumed as a matter of law that
they have waived or surrendered their right to insist upon a
strict compliance with the covenant, because they did not at-
tempt to restrain violations of the restriction in all parts of
that very large tract of ground, when they themselves were
not directly injured thereby.

The question of abandonment or waiver in such a case may
be shown by parol, since it is largely a matter of the inten-
tion of the parties, but no such abandonment or waiver will
be presumed from the mere fact that the owner of property
for the benefit of which restrictions have been created has
not taken steps to prevent violations of such restriction,
where his property is not affected by such violations.  15 *C.
J.* 1254; *Devlin on Real Estate, page* 1870.

It cannot be said, therefore, beyond a reasonable doubt,
that this property may not be subject to the restriction, nor
can it be said that other persons owning other lots affected
by the restriction, who are not before the court in this case,
will not be permitted to enforce it.

Whether this restriction has been waived or abandoned generally is a matter of fact depending upon acts and conduct, and we would not attempt in this proceeding to determine the rights of lot holders, which might be very seriously affected by such a decision, because such persons are neither before the court nor represented. In *Miller's Equity,* par. 694, it is said, in speaking of a decree for specific performance: "The decree being a judgment *in personam* and not *in rem* binds only those who are parties to the suit and those claiming under them; and in no way decides the question in issue as against the rest of the world. Therefore, doubts on the title of an estate are liable to be discussed between the owner of the estate and some third person not before the court and not bound by its decision. If there be any reasonable chance that some third person may raise a question against the owner of the estate after the completion of the contract, the court considers this to be a circumstance which renders the bargain a hard one for the purchaser, and one which in the exercise of its discretion it will not compel him to execute." The same authority says in paragraph 692: "The general rule is that the purchaser will not be compelled to take a title which is not free from reasonable doubt and which might in reasonable probability expose him to the hazards of litigation"; and in 25 *R. C. L.,* page 274, it is said: "Specific performance of a contract for the purchase of land will not be decreed where the vendor cannot show a clear title, but merely one concerning which there is a reasonable doubt * * * It is immaterial that it is doubtful whether the defect will ever incommode the purchaser. If there is any reasonable chance that some third person may raise a question against the owner of the estate after the completion of the contract, 'the court considers this a circumstance which renders the bargain a hard one for the purchaser, and one which it will not, in the exercise of its discretion, compel him to execute."

Now under the circumstances of this case, manifestly it cannot be conclusively or finally said upon the testimony

before us, which relates to only a few violations of these restrictions in a tract of city property containing over four hundred acres in a period of over sixty years, when the restrictions appear to have been observed in the immediate vicinity of the lot in question, that the owners of other lots on the same block cannot insist upon the application of the restrictions to that lot.

In our opinion, therefore, the complainants were not entitled to the relief sought in their bill of complaint, and it should have been dismissed, and it therefore becomes necessary to reverse the decree appealed from and dismiss the bill.

*Decree reversed and bill dismissed with costs to the appellant.*