## HOUSING ENGINEERING CO. *v.* DAVID M. ANDREW CO.

[No. 79, October Term, 1944.]

*Decided January 11, 1945.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, and HENDERSON, JJ.

*Leo M. Alpert* and *Samuel K. Dennis,* with whom were *Makover and Kartman* on the brief, for the appellant.

*Nathan Patz,* with whom was *Charles E. Orth* on the brief, for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

This is a suit for specific performance of a contract for the purchase of real estate, brought by the vendor, appellee here, against the vendees-appellants. The appellee was the owner of a piece of property about 300 feet square at the northeast corner of Sisson and 26th Streets in the City of Baltimore, and advertised it to be sold at

public auction on March 22, 1943, on the premises. Appellee also owned a small lot on the south side of 26th Street, not directly connected with the larger lot, but used with that lot for the purpose of appellee's business. The advertisements are not quite clear whether this smaller lot was to be included in the sale or not, but the appellee claims that it was announced at the sale that the smaller lot was included, and the appellants admit that they examined it prior to the sale and understood it was to be sold. At the sale, both lots were offered as an entirety in fee simple, and the appellants purchased them for the sum of $24,200, on which they made a deposit of $3,500. Appellants had the title examined, and it was reported to them by the Title Company that there was an unrecorded equitable interest in David M. Andrew in all of the land sold, and that there had been a perpetual easement previously granted by the appellee to the American Oil Company in a railroad siding which led from the Baltimore & Ohio Railroad to the smaller lot with "the right to cross the ground intervening between the siding for the purpose of loading and unloading cars and particularly the right to forever use and maintain all pipe lines now connected with said Railroad and the above described property." The "above described property" was a tract of land, south of Twenty-sixth Street and immediately west of the smaller lot, which the appellee conveyed to the American Oil Company. The railroad siding ran on the smaller lot, and had been used by the appellee to unload stone. At the place of unloading on the southern side of the smaller lot the ground was much lower than at the level of Twenty-sixth Street. The appellee was accustomed to raise its stone to the street level by a derrick, and then have it transported in trucks to the larger lot further up on the other side of Twenty-sixth Street.

When the situation with respect to the title was disclosed to the appellants, they notified the appellee. The undisclosed easement in David M. Andrew was probably extinguished by a deed obtained from all of his

heirs, but the appellee was unable to have removed the easement of the American Oil Company. Appellants refused to take the property under these circumstances, and after considerable correspondence they brought suit against the appellee for a return of the purchase money. This suit was filed in the Superior Court of Baltimore City on August 6, 1943, and after the appellee had appeared and demanded particulars, pleas were filed on April 9, 1944, one of these being on the equitable ground that on April 8, 1944, the original bill of complaint had been filed in the instant case in the Circuit Court No. 2 of Baltimore City, to compel the carrying out of the contract. Appellants defended this case on the ground of laches, and on the ground that the vendor could not give a good and merchantable title. The Chancellor decided that the smaller lot was relatively unimportant, both in value and utility, in relation to the whole property, and decreed performance with an abatement of the purchase price in the amount of $485, which he found to be the value of the smaller lot. From that decree this appeal was taken.

The appellee excuses the charge of laches made against it because there has been no substantial change in the situation between the parties by reason of any delay in bringing this suit. On the substantive question, it contends that the appellants attached very little importance to the purchase of the smaller lot for the use of their business, because they offered immediately to sell it to the American Oil Company for $6,000. Two of the appellant partners, however, give a different explanation in their testimony. They show that the appellants were in the machine tool business, and were also prefabricating houses, and all their materials for prefabricating were received by rail. The railroad siding was very important to their operations. They intended to put loading platforms on the smaller parcel, and then carry their materials on trucks from these loading platforms. These platforms could not be built because of the right of the American Oil Company to cross the prop-

erty to the siding. The appellants also had in mind selling the small lot to the American Oil Company, who, they thought, would need it. If they could get a good price for it, they would arrange some other method of getting their materials hauled from the railroad. They could not sell it to the American Oil Company, however, because the latter said it already had the use of the property, and saw no occasion to buy it. From the appellants' standpoint, therefore, the smaller lot was important for either one of two purposes, neither of which they could realize because of the easement of the American Oil Company. They could not put their loading platforms on it and use it in the way they wanted for unloading their materials because that would interfere with the access of the American Oil Company. And they could not reduce the investment in their purchase by selling it to the American Oil Company, because the latter already had all the use of it necessary for its purposes and would not buy. Had the easement of the Oil Company not been in existence, appellants could have used the property in any way they wanted, and might have made an advantageous sale of it to the American Oil Company, because access to the railroad siding was important to the latter.

A court of equity will decree specific performance of a contract almost as a matter of course, if the terms are clear and unobjectionable from any public standpoint. *McKeever v. Washington Heights Realty Corp.,* 183 Md. 216, 37 A. 2d 305. Such a suit is addressed to the sound discretion of the Court, but that discretion is not arbitrary, and where the contract is clearly established it is the duty of the Court to enter the decree. *Soehnlein v. Pumphrey,* 183 Md. 334, 37 A. 2d 843; *Taussig v. Van Deusen,* 183 Md. 436, 37 A. 2d 915. These principles are well established by many Maryland cases. Those above cited are the latest decisions of this Court on the subject.

The discretion of the Court will be exercised when it appears that the vendor cannot deliver exactly what he

agrees to sell. In that case the question arises whether what he can deliver is practically the same as that agreed upon, or whether there is such a material difference as to render the property purchased unfit for the use for which it was purchased. In the former case, it is generally a question of a lack of acreage or footage, and courts customarily decree performance with a proportionate reduction of the purchase price. Such cases are *Foley v. Crow,* 37 Md. 51, and *Kriel v. Cullison,* 165 Md. 402, 169 A. 203. See also the recent case of *Suburban Garden Farm Homes Corp. v. Adams,* 171 Md. 212, 188 A. 808.

Cases of the second class are those where it has been held that the defects seriously affect the value of the property to the purchaser. Some of these are strikingly like the case before us. In *Keating v. Price,* 58 Md. 532, the appellee purchased about twenty acres of land in Queenstown, in Queen Anne's County. One-fourth of an acre of this land, which had been used as part of the property sold, was found not to belong to the vendors, but to the Chester River Steamboat Company, and therefore it could not be conveyed to the vendee. This one-fourth of an acre lay upon navigable water, adjacent to the Steamboat Company wharf, and was of importance to the purchaser who intended to erect a phosphate factory and a canning factory. The water-front was largely what he was trying to get. The absence of the one-fourth acre on the water interfered considerably with the means of access to the property. The Court thought the contract of sale should be rescinded because "a purchaser is compellable to accept property not strictly corresponding to that described in the sale, only when the variance is so immaterial that he is considered as getting substantially what he intended to buy and what constituted the object and inducement of his purchase."

In *Shea v. Evans,* 109 Md. 229, 72 A. 600, 601, the appellee bought sixteen lots and after she had made her contract and given a deposit, she was advised that there were certain restrictions on the property prohibit-

ing any part of a building from being erected nearer to the street than fifteen feet, and prohibiting any barn, stable, coop or other building to be erected nearer to the street than fifty feet. The Court declined to compel specific performace of this contract saying: "But whatever the effect of such restrictions may actually be, the court cannot say that they will not affect the value of the lots, and Mrs. Evans cannot be required to accept them, subject to the restrictions, in the absence of more satisfactory proof that she had agreed to them, or knew of their existence. Vendors owning lots with restrictions such as these must inform purchasers of them, or see that they are aware of them, if they want courts of equity to enforce such contracts."

In the late case of *McKenrick v. Savings Bank*, 174 Md. 118, 197 A. 580, a lot was bought by the appellant, but he declined to complete his purchase, on the ground that the land was incumbered by certain restrictions. This Court in a lengthy opinion discussed the question of restrictions, and when they were validly imposed, and finally determined that no restrictions existed against the land purchased, and that the contract of sale would be enforced.

In so doing, however, the rule was laid down with numerous citations of authority in the following words: "It is settled law that restrictions which limit the use which an owner may make of his land are incumbrances which are inconsistent with an absolute and unfettered title thereto, and that one who has agreed to purchase land upon the condition that the vendor convey to him a good and merchantable title is not, unless he had notice of them when the contract was made, required to accept a title burdened with restrictions."

In the case at bar it seems to us that the learned Chancellor treated this case as one in which the defect was not material, when it belongs in the class of those in which the part of the property which cannot be conveyed is essential to the use of the property desired by the vendee. The undisclosed existence of the easement

of the American Oil Company over the smaller lot prevents its use by the appellants, either as a method of supply to the larger lot, or as a method of materially reducing the purchase price. It is immaterial for the purposes of the case which use was more important to the appellants. Either use was within their rights as purchasers of a fee simple lot. They can make neither use of it while the easement is upon it. We do not think they should be compelled to take it, and we do not think that an abatement of the purchase price to the extent of its market value, simply as land, in any way relieves the situation. They should not be compelled to take what they did not buy, and we should not attempt to make a bargain for them.

For the reasons above stated, the decree will be reversed and the bill dismissed.

*Decree reversed; bill dismissed, with costs to appellants.*