PERLMUTTER *v.* BACAS

[No. 175, September Term, 1958.]

*Decided March 20, 1959.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ., and DIGGES, J., Associate Judge of the Seventh Judicial Circuit, specially assigned.

*Joe M. Kyle* and *R. Robert Linowes,* with whom were *John P. Moore* and *Moore & Linowes* on the brief, for the appellant.

*Thomas C. Kelley,* with whom were *Kelley & Smith* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

Perlmutter contracted to buy a tract of land in Montgomery County from John Bacas, intending to subdivide it. At the suit of Bacas, the chancellor decreed that Perlmutter should perform specifically. We find that Bacas' bill should have been dismissed because a mistake as to the material fact that adequate access roads were available induced Perlmutter to sign the contract.

Perlmutter asked Hastings, a real estate broker, to find out if the tract was for sale. Hastings knew that Aris Bacas, also a realtor, acted for his brother John and went to him and was given a sketch of the land. Hastings prepared a contract which the parties signed, calling for the sale and purchase of the "Bacas tract of Seven and Eight-Tenths acres

at Coquelin Parkway as shown on attached plat and made part hereof." The plat made a part of the contract was the sketch given Hastings by Aris Bacas. The contract called for a purchase price of $4,500 an acre, the actual acreage to be determined by a survey. The vendor agreed to pay the regular commissions to Hastings "his agent."

The plat made a part of the contract showed the Bacas land outlined in red. The interior was marked out in lots, blocks and streets. Defined on the plat is what appears to be a street called "Farmington Drive", abutting part of the southern section of the area outlined in red. Also shown was another street, unnamed on the plat, which ran in an arc between two sections outlined in red, and eventually intersected Farmington Drive. This street is referred to by the parties as "Farmington Court" and is so marked on a recorded plat introduced in evidence.

Hastings testified that the unnamed street was described to him by Aris Bacas as a right-of-way that "would afford proper access to develop the property" shown on the plat made a part of the contract. Hastings said that from the plat he figured Farmington Court to be a fifty-foot right-of-way, and from what Bacas had told him, assumed it to be of record. Although Bacas denied telling Hastings that Farmington Court was a fifty-foot right-of-way, he did not deny he told him that there was proper access to the land. Bacas says he did not put the red lines on the plat, although he concedes that they were on there when the contract was signed and admits that he gave the plat to Hastings to show the outlines of the land his brother still owned, the residue of a much larger tract. Hastings told Perlmutter that there was access to the property by a fifty-foot right-of-way and indicated to him "that there would be access to the land suitable for constructing the necessary road in order to develop the land, based on the plan which was supplied * * * by Mr. Bacas and based on * * * conversation with Mr. Bacas." Perlmutter said he read the plat as showing Farmington Court and Farmington Drive to be of sufficient width to afford proper access to the property as he planned to develop

it, and that it was on the basis of the plat that he entered into the contract.

Farmington Drive, along its length abutting the Bacas property, actually is dedicated to public use for a width of only twenty-five feet. Farmington Court has a width dedicated to public use of fifteen feet only, although Aris Bacas offered to convey, as part of the land covered by the contract, an additional fifteen feet which he owned but which at the time of the making of the contract was thought to be owned by his brother, the vendor.

A land planner and civil engineer, whose qualifications were acknowledged and stipulated to, identified a proposed plan of subdivision of the property, which he had prepared, and a letter from the chief planning engineer of the Maryland-National Capital Park and Planning Commission, in which it was stated that the proposed plan had been disapproved because of a lack of adequate access, due to the insufficient right-of-way of Farmington Court and Farmington Drive. The parties agree that under the applicable law (Montgomery County Code, 1955, Secs. 93-6 through 93-19), the minimum permitted width of such roads is sixty feet and that under Sec. 93-18 (b) (2), the County Manager may waive that minimum where "the proposed right of way connects with an existing right of way of substandard width which was lawful when established." The record indicates that had Farmington Court and Farmington Drive been fifty-foot rights of way, a waiver from the County Manager and approval of the Maryland-National Capital Park and Planning Commission would have been forthcoming to make them available for access to the property. The engineer testified that, as the situation was, the access could only be from another road named Coquelin Branch, but that the expense of constructing such a means of access would be "prohibitive" and make development impracticable. He said further that even if Farmington Court were made a dedicated road of thirty feet in width, as Aris Bacas had offered to do, the requirements of the County would not be met and the authorities would not give their approval. The title examiner, a witness for Bacas,

said that Perlmutter told him he would take the property if practicable access could be given.

The testimony in this case was taken before a master, and the conclusions of the chancellor are entitled to no more weight than the record affords them. We find it clear that Perlmutter bought the land for development purposes and that he would not have bought it if he had not thought development was feasible by the use of Farmington Drive and Farmington Court as dedicated roads with widths of fifty feet. Since they are not, he cannot use the land for the purpose for which he bought it. The situation is not unlike that in *Housing Engineering Co. v. Andrew Co.,* 184 Md. 290, where a purchaser bought two lots for use in its business, intending to put loading platforms on the smaller parcel. The title search disclosed that the platforms could not be built because of an easement across the smaller lot. This Court refused specific performance on the ground that the vendor could not deliver what he had agreed to sell and the defect rendered the property inadequate for the use for which it was purchased.

In cases of this kind, the applicable law has been settled. A court of equity will decree specific performance almost as a matter of course if the terms of the contract are clear and unobjectionable, and although such relief is addressed to the sound discretion of the court, that discretion is not arbitrary. Where the contract is clearly established, it is the duty of the court to enter the decree. Nevertheless, the discretion of the court will be exercised to deny the relief where to grant it would be to compel the defendant to perform a contract which he did not intend to make or which he would not have entered into had its true effect been understood. 3 Pomeroy, *Equity Jurisprudence,* 5th Ed., Sec. 860; 5 Williston, *Contracts,* Rev. Ed., Sec. 1427; *Somerville v. Coppage,* 101 Md. 519, 523-524; *The Glendale Corp. v. Crawford,* 207 Md. 148, 154; *Clark v. Kirsner,* 196 Md. 52, 56; *Kappelman v. Bowie,* 201 Md. 86, 89-90.

The parties agree that there was no intentional misrepresentation of the facts. Each side argues that Hastings was the agent of the other, but, in the view we take of the case,

the result is the same whoever is right. Specific performance may be, and has been, refused where the innocent mistake is mutual or that of one side only. *Somerville v. Coppage, supra.* Cases in which innocent misrepresentation as to a material fact was made by the vendor and specific performance was denied, include *Ginther v. Townsend,* 114 Md. 122; *Housing Engineering Co. v. Andrew Co., supra; The Glendale Corp. v. Crawford, supra.* Cases where the mistake was that of the vendee only and relief was denied include *Diffenderffer v. Knoche,* 118 Md. 189, 194-196; *Henneke v. Cooke,* 135 Md. 417; *Kappelman v. Bowie, supra.*

The chancellor found that Perlmutter should have known from the plat that Farmington Drive and Farmington Court were not dedicated streets fifty feet wide and, therefore, is bound by his agreement to buy the land, even though they were not. Presumably, the chancellor's finding was based on the fact that on the plat arrows ran from the property lines abutting the streets to the lines marking their centers. We fail to see that this would show more than that the adjoining owners had title to the center of the street, subject to the dedication.

It has been said that where the mistake of the defendant was not induced or contributed to by the plaintiff, specific performance will be withheld only in cases where to compel it would be highly unreasonable, and that a mistake which was solely the result of the defendant's culpable or "inexcusable" negligence, will not warrant denial of the relief. *Henneke v. Cooke,* and *Diffenderffer v. Knoche,* both *supra.* In the case before us, if it be assumed that Bacas did not induce or contribute to Perlmutter's mistake in any way, we think that it would be highly unreasonable to force Perlmutter to take property which he could use for the purpose for which he bought it only at prohibitive cost, and that his mistake was not inexcusable or culpable to a degree that bars him from resisting specific performance successfully. The highest degree of care might have caused Perlmutter to check the records before he signed the contract, but such a standard of care is not required. 3 Corbin on *Contracts,* Sec. 612. Pomeroy, in the work cited, says in Sec. 856b: "The

conclusion from the best authorities seems to be, that the neglect must amount to the violation of a positive legal duty. The highest possible care is not demanded. Even a clearly established negligence may not of itself be a sufficient ground for refusing relief, if it appears that the other party has not been prejudiced thereby." This Court has followed Pomeroy's views. See *Henneke v. Cooke, Kappelman v. Bowie,* and *The Glendale Corp. v. Crawford,* all *supra;* and *Baltimore v. DeLuca-Davis Co.,* 210 Md. 518, 527.

Here the granting of specific performance would heavily penalize Perlmutter, while its refusal does not prejudice Bacas beyond the loss of his bargain.

> *Decree reversed, with costs, and bill dismissed.*