FINKELSTEIN, ET UX. *v.* MILLER, ET UX.

[No. 306, September Term, 1964.]

*Decided July 15, 1965.*

The cause was argued before Prescott, C. J., and Hammond, Horney, Sybert and Oppenheimer, JJ.

*Plummer M. Shearin* and *Patrick C. McKeever* for appellants.

*Brainard H. Warner, III* for appellees.

Sybert, J., delivered the opinion of the Court.

On August 3, 1963, the appellants, Herman and Elizabeth Finkelstein, entered into a written contract of sale with the appellees, Peter and Frances Miller, under which the appellants agreed to sell and the appellees agreed to buy a tract of land, with buildings, located in Bucks County, Pennsylvania. The contract provided for a purchase price of $67,500, payable as follows: an initial deposit of $1,000, and an additional deposit of $5,500 to be paid by August 10, 1963, each to be paid into a real estate agent's escrow account at a Bucks County bank, and the balance of the purchase price to be paid at final settlement on November 4, 1963, on which date the sellers were to deliver a deed. On October 3, 1963, the deposits mentioned in

the contract not having been paid, the appellants filed a bill of complaint in the Circuit Court for Montgomery County against the appellees seeking specific performance of the contract.

The appellants' bill of complaint alleged, *inter alia,* that the appellees had refused to perform the contract and that they, the sellers, "were and always have been, and still are ready, willing and able to execute and deliver to the Defendants a deed to the premises and in all manner to perform the agreement on their part." In their answer the appellees alleged that on or about August 8, 1963, the Finkelsteins and the Millers had agreed "to terminate, cancel, or rescind" the contract.

The case came on for hearing before Judge Shook in August, 1964. The contract was admitted in evidence by stipulation. Mr. Finkelstein was the only witness. He testified that he and his wife owned the property, that the Millers had failed to make the payments required by the contract, and that he and his wife were ready, willing and able to convey the property. On cross-examination, he testified that he had not yet executed a deed to the defendants. The plaintiffs closed their case at the end of Mr. Finkelstein's testimony, whereupon the defendants made a motion to dismiss the bill of complaint. The defendants argued that the plaintiffs had not made out a *prima facie* case for specific performance because they had failed to prove that they could convey a marketable title and that they had tendered a deed to the defendants. Judge Shook granted the motion to dismiss for the reasons advanced by the defendants and the sellers appealed.

We shall first consider whether under the circumstances of this case the appellants were required to make a tender of a deed to the appellees. As noted earlier, the appellants alleged below that the appellees had, in effect, repudiated the contract of sale. In their answer to the bill the appellees admitted, in effect, that they had not performed under the contract and that they did not intend to perform. While the Millers alleged that there had been a mutual agreement to cancel the contract, this was a matter of defense which they had the burden of proving. Although our attention has not been directed to any Maryland case holding that a vendor is not required to tender a deed as a

prerequisite to maintaining an action for specific performance, we believe that tender was not required under the circumstances of the case before us. In the recent case of *Darneille v. Geraci*, 237 Md. 51, 57, 205 A. 2d 55 (1964), we held that it was unnecessary for a purchaser to make a tender of the purchase price before suing for specific performance where the seller had "expressed his intention not to perform." See also *Lissau v. Smith*, 215 Md. 538, 545-546, 138 A. 2d 381 (1958). And in the earlier case of *Jaeger v. Shea*, 130 Md. 1, 7, 99 Atl. 954 (1917), where a vendor had refused to convey as required by a contract of sale, this Court stated that "* * * it is not necessary to allege and prove a technical tender [of the purchase money], but the averment in the bill of complaint of the purchaser's readiness and ability to comply with the contract of sale is sufficient." These cases stand for the proposition that where tender would have been futile it was not a prerequisite to a suit by a purchaser for specific performance. To the same effect see *Pomeroy, Specific Performance of Contracts* (3rd ed., 1926), sec. 326, and 6 *Williston Contracts* (3rd ed., 1962), sec. 834. We can see no logical reason for not applying the same rule where the seller sues for specific performance. In *Christian v. Construction Co.*, 161 Md. 87, 93, 155 Atl. 181 (1931), which involved a law action for breach of contract, the Court stated that it was unnecessary for the vendor to make a tender of a deed where it would have been futile. And see *Livingston v. Green Prop., Inc.*, 222 Md. 354, 357, 160 A. 2d 594 (1960). We therefore hold that the appellants were not required to allege and prove tender of a deed.

The remaining question is whether the appellants were required to prove that they could convey a marketable title to the appellees. To support the assertion that such proof was necessary in order to make out a *prima facie* case, the appellees rely primarily on the case of *Garner v. Union Trust Co.*, 185 Md. 386, 45 A. 2d 106 (1945), where it is said (at p. 389 of 185 Md.): "It is a well established principle that a vendor of real estate, in order to maintain a suit for specific performance of the contract of sale, must show that the title tendered by him is marketable." However, in *Garner*, unlike the situation now before us, the defendant-purchaser had asserted as a positive

defense the claim that there was a defect in the vendor's title. Therefore, the case does not stand for the proposition that the vendor must invariably as a part of his *prima facie* case prove marketable title, but requires only that where the purchaser claims there is some specified defect in title the vendor must come forward with evidence to prove marketability. This Court has stated, in effect, in many cases that in a suit for specific performance by a vendor of real estate, the purchaser will not be compelled to accept a deed unless it is proven that the title is marketable, or that its marketability is free from reasonable doubt. See, for example, *Hill Co. v. Pallottine Fathers*, 220 Md. 526, 154 A. 2d 821 (1959); *Wm. H. McCeney, Inc. v. Thibadeau*, 215 Md. 77, 137 A. 2d 206 (1957); *Berlin v. Caplan*, 211 Md. 333, 127 A. 2d 512 (1956); *Sinclair v. Weber*, 204 Md. 324, 104 A. 2d 561 (1954); *Housing Eng. Co. v. Andrew Co.*, 184 Md. 290, 40 A. 2d 368 (1945); *Bealmear v. James*, 147 Md. 274, 128 Atl. 40 (1925); *Shea v. Evans*, 109 Md. 229, 72 Atl. 600 (1909); *Md. Construction Co. v. Kuper*, 90 Md. 529, 45 Atl. 197 (1900); *Levy v. Iroquois Co.*, 80 Md. 300, 30 Atl. 707 (1894). But in all of these cases the purchaser contended that there was some defect in the vendor's title.

In the case before us the appellees did not contend below and do not assert here that there is a defect in the appellants' title, but argue that nevertheless the appellants must prove initially that there is none. The appellees cite no Maryland case to support this argument and we have found none. We think the question of marketability is one of defense and in the absence of a bona fide dispute as to marketability the vendor is not under obligation to prove title. And if the question of marketability is free from a reasonable doubt specific performance should be decreed. Cf. *Perlmutter v. Bacas*, 219 Md. 406, 411, 149 A. 2d 23 (1959). In the case before us it was conceded by the appellees that marketability of title was not a real issue in the lower court. The initial burden of a vendor-plaintiff is to allege that he is ready, willing and able to perform. See *De-Crette v. Bonaparte*, 139 Md. 252, 114 Atl. 880 (1921); cf. *Jaeger v. Shea, supra*. Here, the appellants made such allegation in their bill. Mr. Finkelstein's testimony to the same effect made out a *prima facie* case for specific performance, in the absence of a real issue as to defective title.

We think the order dismissing the appellants' bill was erroneously passed and hence must be reversed and the case remanded for further proceedings.

*Order reversed and case remanded for further proceedings; costs to be paid by appellees.*