614 A.2d 576

Evelyn J. COE et al.

v.

Fannie C. HAYS, Individually, etc.

No. 135, Sept. Term, 1991.

Court of Appeals of Maryland.

Oct. 28, 1992.

Charles F. Wagaman, Jr., Hagerstown, argued, for petitioners.

Christopher Joliet, Hagerston, argued and on brief (Alex Bognar, on brief), for respondents.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

We granted certiorari to consider whether (1) the doctrine of equitable conversion applies to determine how to distribute the proceeds of a sale of real property when the contract of sale was executed prior to the decedent's death, but settlement did not occur until after his death and (2) the decedent's intentions are clearly reflected in his will. For reasons that will appear hereinafter, we need address only the first question.

## I.

In 1979, the decedent Gail A. Lewis ("Lewis") executed his Last Will and Testament. It provided, in pertinent part:

SECOND: Unto Fannie C. Hays, I give *all of my personal property, including but not limited to all furniture and fixtures in my residential home, any motor vehicles which I may own and any monies which I may have at the time of my death.* Also, unto the said Fannie C. Hays, I give and devise a life estate in and for the term of her life, in and to a parcel of real estate located in the Hauver's Election District of Frederick County, Maryland, improved with a residential home, containing 8 acres, more or less, and being all and the same parcel of real estate shown and described as parcel #1 in a deed dated December 6th, 1952 from Roscoe G. Wolfe, et al., unto Gail A. Lewis and wife, said deed being recorded in Liber 518, folio 538, among the Land Records of Frederick County, Maryland. The interest of the said Evelyn A. Lewis having been conveyed unto Gail A. Lewis, by deed dated August 30th, 1978.

THIRD: All the rest, residue and remainder of my estate, I give unto my children equally.

(Emphasis added).

More than eight years after the will was executed, Lewis entered into a contract to sell certain real property he owned for $100,000.00. By his will, the respondent, Ms. Hays, was granted a life estate in that property and,

because it was not otherwise bequeathed, the remainder would have passed under the residuary clause. The buyers having paid $1000.00 down, settlement was scheduled on or before June 1, 1988, when the balance was to be paid. The contract required Lewis to convey good and marketable title and to pay one-half of the transfer tax and one-half of the State stamps, pro-rated to the date of settlement. All other costs were to be paid by the purchasers.

Prior to settlement, Lewis and the buyers executed an addendum to the contract. It stated, "[b]ecause a title problem has arisen and a complete survey is necessary, we hereby extend this contract until a good and marketable title can be transferred." Lewis died on June 19, 1988, before the sale was finalized.

On November 16, 1988, Ms. Hays settled on the property in accordance with her powers as the appointed personal representative.[1] Subsequently, she filed the estate's First and Final Administration Account, which showed the proceeds from the real estate sale being distributed to her as personalty under the doctrine of equitable conversion. Petitioners, the decedent's children and residuary legatees, Evelyn Coe, Martha L. Wolfe, Gail R. Lewis and Basil E. Lewis ("the children"), filed exceptions to the account.

On August 11, 1989, the children filed a Complaint For Construction of Will in the Circuit Court for Washington County. They alleged that the proceeds of the real estate sale should be treated as realty, rather than as personalty, and distributed to them. Ms. Hays answered, repeating

---

1. Maryland Code (1974, 1991 Repl.Vol.) § 1–301 of the Estates and Trusts Article provides:

   All property of a decedent shall be subject to the estates of decedents law, and upon his death shall pass directly to the personal representative, who shall hold the legal title for administration and distribution, without any distinction, preference, or priority as between real and personal property.

   See also § 7–401(u) which empowers the personal representative to "perform the contracts of the decedent that continue as obligations of the estate, and execute and deliver deeds or other documents under administration as the contract may provide."

that the proceeds are personal property and, thus, under the doctrine of equitable conversion, were properly distributed to her.

In an oral opinion, the trial court found the doctrine of equitable conversion inapplicable. Finding, by virtue of the residuary clause, that Lewis intended his children to receive his real property, it concluded that applying the doctrine would produce a result inconsistent with that intent. Alternatively, the court opined that equitable conversion did not occur "because of the cloud [on the title] that existed at that time." It ordered the proceeds treated as realty, to which, pursuant to the residuary clause, the children were entitled.

Ms. Hays appealed to the Court of Special Appeals, claiming that the lower court erred by failing to apply the doctrine of equitable conversion. Construing the circuit court's comment that there was a "cloud that existed at that time" as referring to the Rule Against Perpetuities, she also argued that the circuit court improperly found the contract unenforceable on that account. The children's cross-appeal challenged the lower court's refusal to admit extrinsic evidence to show the decedent's intent at the time he executed his will. In urging the intermediate appellate court to uphold the trial court's decision, they relied on only one of the court's rationales—that it would be inconsistent with the testator's intent to apply equitable conversion.

Reversing, the intermediate appellate court concluded that Lewis' bequest to Ms. Hays encompassed both tangible and intangible personal property. *Hays v. Coe*, 88 Md.App. 491, 498–99, 595 A.2d 484, 487–88 (1991). Next, being unpersuaded by the trial court's rationale, the court held that, because the contract was executed before Lewis' death, although not settled until afterward, the doctrine of equitable conversion did apply to pass the proceeds of the sale to Ms. Hays. *Id.* at 503, 595 A.2d at 490. The court agreed with the trial court's exclusion of extrinsic evidence, *id.* at 505, 595 A.2d at 491, concluding that the language of

the will was clear and unambiguous.[2] Finally, the court held that neither the contract nor the addendum, extending the contract until a good and marketable title could be transferred, violated the Rule Against Perpetuities or was otherwise indefinite and unenforceable. *Id.*, 88 Md.App. at 503–504, 595 A.2d at 490.

## II.

Under the doctrine of equitable conversion, "real estate is considered for certain purposes as personal property and personal property as real estate." *Harrison v. Prentice,* 183 Md. 474, 479, 38 A.2d 101, 104 (1944); *Sands v. Church, ETC.,* 181 Md. 536, 544, 30 A.2d 771, 776 (1943); Roger A. Cunningham et al., *The Law of Property,* § 10.13 at 698–705 (1984). Among the ways in which the doctrine may be triggered is by a direction in a will, *Harrison,* 183 Md. 474, 38 A.2d 101; *Miller v. Hirschmann,* 170 Md. 145, 148, 183 A. 259, 261 (1936); *Talbott v. Compher,* 136 Md. 95, 99, 110 A. 100, 102 (1920), and by contract, *Watson v. Watson,* 304 Md. 48, 61, 497 A.2d 794, 800 (1985). *Himmighoefer v. Medallion Indus., Inc.,* 302 Md. 270, 278, 487 A.2d 282, 286 (1985).[3]

---

**2.** The intermediate appellate court also observed that the same result would have been reached even had the extrinsic evidence the children sought to have admitted been considered: (a) the decedent contracted to sell the real estate in question not two months *before* he executed his will, as in *Frick v. Frick,* 82 Md. 218, 33 A. 462 (1895), but nine years *after* executing it, (b) he had sold other real estate, the proceeds to which the children make no claim, a year after executing the will, and (c) again unlike *Frick,* there is no language in the real estate contract directing that the proceeds from the sale be paid to his heirs as set forth in his will. *Id.* 88 Md.App. at 491, 505–506 n. 4, 595 A.2d at 484, 491 n. 4.

**3.** Other Maryland cases discuss equitable conversion in the context of a court decreed sale, *Nelson v. Hagerstown Bank,* 27 Md. 51 (1867); *Newcomer v. Orem,* 2 Md. 297 (1852); *Hammond v. Stier,* 2 Gill & J. 81 (1829); *Jones v. Jones,* 1 Bland 443 (1824), or trust instruments, *Paisley v. Holzshu,* 83 Md. 325, 34 A. 832 (1896); *Lynn v. Gephart,* 27 Md. 547 (1867).

A.

In *Harrison*, 183 Md. at 474, 38 A.2d at 101, we explained the doctrine, and its rationale, as it pertains to a direction in a will:

> [W]here a testator manifests a clear intention that his real estate shall be sold and the proceeds thereof distributed, the court considers the real estate converted into money at the time of the testator's death, unless there is some provision in the will which postpones the time of conversion.... The basis for the doctrine of equitable conversion ... is the intention of the party creating a right in the property, and the maxim "Equity regards that as done which ought to be done." (citations omitted).

*Id.*, 183 Md. at 479, 38 A.2d at 104. In this regard, "The doctrine [of equitable conversion] is not a fixed rule of law, but proceeds upon equitable principles which take into account the result which its applications will accomplish." *Sands v. Church, ETC.*, 181 Md. at 544, 30 A.2d at 776.

For the doctrine to apply, "there must be an absolute obligation to convert either immediately or at a future time. A discretionary power, or mere expression of desire that a sale be made, is not sufficient." *Harrison*, 183 Md. at 479–80, 38 A.2d at 105.

██ Equitable conversion, not being a fixed or absolute rule to be applied in all circumstances, *see Sands*, 181 Md. at 544, 30 A.2d at 776; *Harrison*, 183 Md. at 100, 38 A.2d at 104; *Talbott*, 136 Md. at 100, 110 A. at 102, applies when, consistent with the testator's intent as expressed in the will, "[e]quity regards that as done which ought to be done," *see Watson*, 304 Md. at 61, 497 A.2d at 800; *Harrison*, 183 Md. at 479–80, 38 A.2d at 105; it takes place no further than is made necessary by the specific instrument involved. *See*

*Cronise v. Hardt,* 47 Md. 433, 436–37 (1878), cited by the children.[4]

*Cronise* involved a suit by a judgment creditor of one a devisee under a will, that authorized the sale of "all or so much and such parts" of the decedent's real and personal property as necessary to pay his debts and funeral expenses. *Id.* at 434–35. Because it had insufficient funds, *albeit* by only a small amount, to pay the debts and funeral expenses, the executrix sold unimproved real property, devised in the will, for considerably more than was necessary to pay those bills. The judgment creditor argued that the excess should be treated as if it were unconverted real estate, to which his judgments against his debtor constituted liens. *Id.* at 436. This Court rejected that argument, holding that the judgment debtor held the surplus proceeds only as personalty, not as realty. *Id.* at 438. Before reaching that conclusion, however, we observed:

> ■t is certainly true, that the conversion of real into personal property, or personal into real, under a power in a will, takes place only *for the purposes for which it is authorized;* and so far as those purposes do not extend, or, in so far as any of them do not take effect in fact or in law, the property is considered as remaining in its former condition, and passes accordingly.

*Id.* at 436–37. Thus, we said the balance of the proceeds over and above that necessary to pay the decedent's debts did not convert to personalty, rather, it "remained impressed with the character of real estate *for the purpose of determining who was entitled to receive it,* " *id.* at 437, but for that purpose only.

## B.

■ Equitable conversion by contract rests on similar, though not identical, underpinnings. In *Himmighoefer,* we explained:

---

4. Additionally, they cite *Orrick v. Boehm,* 49 Md. 72 (1878), which is also illustrative.

The legal cliche, that equity treats that as being done which should be done, is the basis of the theory of equitable conversion. Hence, when the vendee contracts to buy and the vendor to sell, though legal title has not yet passed, in equity the vendee becomes the owner of the land, the vendor of the purchase money. In equity the vendee has a real interest and the vendor a personal interest. Equity treats the executory contract as a conversion, whereby an equitable interest in the land is secured to the purchaser for whom the vendor holds the legal title in trust. This is the doctrine of equitable conversion. (citation omitted).

*Id.*, 302 Md. at 278, 487 A.2d at 286 (quoting 8A Thompson, *Real Property*, § 4447 at 273–74 (Grimes Repl.Vol.1963)). The determination whether real property, the subject of a contract of sale at the testator's death, is realty or personalty depends upon the intent of the testator as well as whether the contract of sale was "valid and binding, free from equitable imperfections, and such as a court of equity will specifically enforce against an unwilling purchaser." *Birckner v. Tilch*, 179 Md. 314, 323, 18 A.2d 222, 226 *cert. denied*, 314 U.S. 635, 62 S.Ct. 68, 86 L.Ed. 509 (1941). Ordinarily, the conversion occurs when the contract is executed, assuming that the contract of sale is *"bona fide* made for a valuable consideration," *Hampson v. Edelen*, 2 H. & J. 64, 66 (1806), and, at that time, is specifically enforceable. *Watson v. Watson*, 304 Md. at 61, 497 A.2d at 800; *Birckner*, 179 Md. at 323, 18 A.2d at 226. It can not occur later than the seller's death, however; if the contract is not specifically enforceable at that time, no conversion can occur.

## C.

Equitable conversion, then, is a theoretical change of property from realty to personalty, or *vice versa*, in order that the intention of the parties, in the case of a contract of sale, or the directions of the testator, in the case of directions in a will, may be given effect. *Harrison*, 183 Md.

at 479, 38 A.2d at 104–105; Cunningham, *The Law of Property* § 10.13 at 698–705.

In the case *sub judice*, real property which would pass under the testator's will was also the subject of an executory contract of sale at the time of the testator's death. The will contained no direction for the sale of that real property. *See Cronise*, 47 Md. 433. Nor, but for the executory contract, would there be any question presented concerning how that property would pass under the will. Therefore, if a conversion occurred it was a conversion by contract, and not by will. Its effect, nevertheless, was to determine to whom the proceeds of that sale ought to pass under the will. *Birckner*, 179 Md. at 323, 18 A.2d at 226.

■ To be specifically enforceable, a contract within the Statute of Frauds ordinarily must be signed by the party to be charged, or by his or her authorized agent and, with reasonable certainty, identify the parties to the contract, the subject matter of the contract, and "the terms and conditions of all the promises constituting the contract and by whom and to whom the promises are made." *Forsyth v. Brillhart;* 216 Md. 437, 440, 140 A.2d 904, 906–907 (1958). *See Nusbaum v. Saffell*, 271 Md. 31, 35, 313 A.2d 837, 841 (1974). See also *Quillen v. Kelley*, 216 Md. 396, 407, 140 A.2d 517, 523 (1958), in which we delineated the circumstances under which specific performance will be decreed:

It needs little, if any, citation of authority to sustain the statement that if an agreement be so vague and indefinite that it is impossible to collect from it the full intention of the parties, it is void, ... and the vendee is entitled to a refund of any payments made upon the purchase price.... But courts are reluctant to reject an agreement, regularly and fairly made, as unintelligible or insensible. *The agreement will be sustained if the meaning of the parties can be ascertained, either from the express terms of the instrument or by fair implication.* The law does not favor, but leans against the destruction of contracts because of uncertainty; therefore, the courts will, if possible, so construe the contract as to carry into

effect the reasonable intention of the parties if that can be ascertained. (citations omitted, emphasis added).

These principles have been applied consistently by this Court. *See Steele v. Goettee*, 313 Md. 11, 24, 542 A.2d 847, 853 (1988); *Nusbaum*, 271 Md. at 31, 36–37, 313 A.2d at 837, 841; *Chambers v. Jordan*, 257 Md. 144, 149–50, 262 A.2d 505, 508 (1970); *Paape v. Grimes*, 256 Md. 490, 495, 260 A.2d 644, 647 (1970); *Gilbert v. Banis*, 255 Md. 179, 185, 257 A.2d 206, 209 (1969).

Moreover, a contract for the sale of real estate is not specifically enforceable against an unwilling purchaser unless the seller of the real estate is able to convey "good and marketable" title. *Berlin v. Caplan*, 211 Md. 333, 343, 127 A.2d 512, 518 (1956); *Garner v. Union Trust*, 185 Md. 386, 389, 45 A.2d 106, 108 (1945); *Shea v. Evans*, 109 Md. 229, 233, 72 A. 600, 601 (1909). When the contract does not prescribe a specific time in which clear title must be delivered, a reasonable time will be presumed to have been meant. *Caplan v. Buckner*, 123 Md. 590, 601–602, 91 A. 481, 485 (1914). This does not mean, however, that specific performance can be ordered at a time when the required performance could not have been tendered. In *Caplan*, the Court made clear that although the plaintiff could not have delivered the good title for which the purchaser contracted when the contract was executed, "at the time appointed for the settlement, he was ready and able to comply with [his] agreement." *Caplan*, 123 Md. at 601, 91 A. at 485. We quoted *Miller's Equity Proc.*, § 686:

"When the agreement shows that the vendor has not, at the time, a clear and unencumbered title, but is to acquire it, and then convey, if he is able to give a clear title at the time when by the equities of the particular case he is required to execute the conveyance in order to entitle himself to the consideration, there will be no obstacle to a specific enforcement by the vendor,"

and *Md. Construction Co. v. Kuper*, 90 Md. 529, 543, 45 A. 197, 199 (1900):

"The authorities are therefore ample to establish the doctrine that the mere fact that the vendor's property is incumbered [sic] or his title is defective, at the time the contract of sale is made, will not prevent his enforcing the contract in equity, if he has removed the incumbrance and perfected the title by the time he is required by his contract to convey it, and, generally, when he has acted in good faith relief will be granted him, if he is ready to furnish a clear title at the time of the decree, provided the delay has not prejudiced the purchaser and time is not of the essence of the contract."

*Id.*

### III.

Review of the contract demonstrates that, not only did the parties intend to contract, but that the terms of the contract, including the duties of the parties, were clear. Were that the complete contract, we could conclude that, as executed, it was specifically enforceable. In the case *sub judice*, however, the addendum to the contract also relates to its specific enforceability; the addendum was made necessary "because a title problem has arisen," which required the extension "until a good and marketable title can be transferred."

The record reflects that, pursuant to the contract of sale, the November 16, 1988 Personal Representative Deed, which purported to convey "all of the real estate described and conveyed to Gail A. Lewis from Evelyn A. Lewis by deed dated August 30, 1978," transferred the real property to the purchasers. Attached to that deed, which also referred to "a confirmatory Deed dated November 3, 1988 and intended to be recorded among the Land Records of Frederick County, Maryland prior to recordation of this deed," was a "New Description." That description, which appears to be dated July 28, 1988 and the product of the complete survey mentioned in the addendum, differs markedly from the description in the August 30, 1978 deed.

The record is silent as to the status, on June 19, 1988, of the title to the real property. The record did not reveal the nature of the title problem acknowledged in the addendum and whether it had been resolved at that time so that good and marketable title could then have been delivered. Unless, however, good and marketable title could have been conveyed when Lewis died, specific performance of the sale contract could not have been ordered and, consequently, equitable conversion could not have occurred.

Although, other than offering the addendum as a joint exhibit, neither party produced evidence concerning the "title problem" it mentioned,[5] the trial court nevertheless made an alternative finding that there was a cloud on the title to the real property that precluded operation of equitable conversion. The Court of Special Appeals construed the reference to a cloud on title as a ruling that the Rule Against Perpetuities had been violated. It correctly rejected that as a viable holding. *Hays,* 88 Md.App. at 504, 595 A.2d at 490. That court also held that the lack of specificity as to when marketable title had to be delivered was not fatal either. *Hays,* 88 Md.App. at 505, 595 A.2d at 491. In so concluding, it focused on the situation that existed when the sale was completed and not that existing at Lewis' death. We believe, however, that the alternative holding of the trial court could just as plausibly have been based on the court's determination that the personal representative failed to prove that good and marketable title could have been conveyed on June 19, 1988, the date of Lewis' death.

The trial court did not state what cloud it found to exist on the property's title. Nor did it explain why that cloud foreclosed the occurrence of equitable conversion. Since the nature of the cloud on title is critical to the determina-

---

5. The party who claims that an equitable conversion occurred, like the party seeking specific performance, has the burden of proof. *Finklestein v. Miller,* 239 Md. 512, 516, 211 A.2d 833, 835 (1965); *Garner v. Union Trust Co.,* 185 Md. 386, 389, 45 A.2d 106, 107 (1945).

tion of whether equitable conversion occurred, we shall remand to the circuit court for a further explanation of its alternative holdings. The court should identify the cloud on title to which it referred and provide the reasons for its conclusion that the property did not equitably convert upon Lewis' death. *See* Maryland Rule 2–522(a). If the court deems it necessary, it may take evidence on that, or related, issues.

JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED. CASE REMANDED TO THAT COURT FOR FURTHER REMAND TO THE CIRCUIT COURT FOR WASHINGTON COUNTY FOR FURTHER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.

COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID ONE–HALF BY THE PETITIONERS AND ONE–HALF BY THE RESPONDENTS.

ELDRIDGE, J., concurs in the vacation of the judgment of the Court of Special Appeals.